CREED T. WISE, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] Section 3165 of the Code, as to advertising the adjournment of the Superior Court, is directory to the Clerk, and if not complied with, still the Court may be held at the time fixed in the order of adjournment; and a party not prejudiced by the omission of the Clerk, cannot complain.

[2.] The plaintiff in error was not injured by such omission in the present case.

[3.] Though the charge of the Court was not felicitous—and in some respects inaccurate—on the subject of drunkenness, yet the jury not being misled, and the evidence being strong and decidadly in favor of the verdict, a new trial should not be granted.

Wise vs. The State.

Murder.  In Butts, Superior Court.  Tried before Judge
SPEER.  April, 1865.

The regular time for the sitting of Butts Superior Court,
in the spring of 1865, was the second Monday in March.  On
the Saturday previous to that day, an order to adjourn the
Court over to the second Monday in April, together with in-
structions to have summoned a large number of tales jurors,
was sent by the Judge to the clerk.  The order was received
by the clerk on Sunday or Monday, and remained in his
office some two or three days before it was entered on the
minutes.  The clerk did not formally adjourn the Court,
deeming it sufficient that the order of the Judge declaring the
adjournment was in his office.  He failed, also, to advertise
the adjournment either at the court-house or in a gazette.
Nearly all the men in the county were summoned to attend
as tales jurors.

The Court met at the time appointed, and a bill of indict-
ment was returned by the grand jury against Wise, the plain-
tiff in error, for the murder of Joseph Pittman.

The case was called for trial ; and Wise moved for a con-
tinuance, (1.) because Col. Bailey, his leading counsel, was
absent ; (2.) because he had a material witness absent in the
army ; (3.) because the Court had not been legally adjourned
over, by reason that the clerk had not adjourned it, nor, for
several days, recorded the Judge's order, nor advertised at
the court-house and in a public gazette ; and (4.) because, in
consequence of the absence of leading counsel and the recent.
employment of other counsel, defendant had not been able
to prepare for his defence.  As to the first ground, it did not
appear that Col. Bailey was absent by Providential cause ;
but defendant insisted that he had had no legal notice of the
adjournment of the Court.  The Court, on account of his ab-
sence, postponed the trial for twenty-four hours, giving op-
portunity to procure another attorney, Col. Doyal, to assist
the counsel in the defence.  As to the second ground, it did

not appear that any effort had been made to *subpœna* the absent witness; and, besides, the testimony expected of him related exclusively to the violent conduct of the deceased, on one occasion, towards the witness, the whole of which the State's counsel proposed to admit if counsel for defendant would reduce it to writing. At no time, during the trial, did the defendant attempt to avail himself of the proposed admission.

The Court refused to continue the case.

The defendant urged the alleged illegality of the adjournment as vitiating the indictment; and when the traverse jurors were put upon him, as ground of challenge to the array; and, when evidence was offered, as a bar to the introduction of any evidence: in all which he was overruled by the Court.

The material facts shown by the evidence were as follows: On the 9th of August, 1864, the deceased was at the defendant's house, in Butts county, quite drunk, and the defendant was about equally drunk. They were seen by a Mr. Henderson, who was with them, to take about three drinks each. They seemed friendly. The deceased, after sleeping about an hour, rode off, to go, as he said, to a Mr. Barnes', and Henderson also left shortly afterwards. This was about twelve or one o'clock in the day. In about two hours afterwards Henderson returned to defendant's house, found him seated in a chair, and the deceased lying on the floor of the dining room, insensible, and with wounds on his head. These wounds proved fatal on the fourth day afterwards. Two of them were fractures of the skull, each some two inches long and one wide. One of them was inflicted, apparently, with a rough pointed, or three-cornered instrument, and the other with something flat and smooth.

A Mr. Gordon went to defendant's house at about three o'clock in the afternoon of the same day, in response to a request purporting to come from defendant's wife. He found defendant sitting in the piazza, and sat down by him. Presently, defendant said to him, "There is a dead man in the house." Gordon asked him who it was, and defendant

told him to go in and see, saying that he wanted him to do for the man all he could. Gordon then went in and found the deceased lying on the floor of the dining room in his blood. Returning to where defendant was, Gordon asked him what gave rise to the difficulty? He answered that deceased came to his house, and, at his table, abused and insulted him about going to the war, and it was more than he could bear,—that deceased said he would have to go to the war the next day. He stated that he struck deceased with an axe, (but only one lick) and seemed to be of opinion that deceased had come to carry him to the war. He said that he had killed one man, and would kill another, for there were not enough men in Butts county to take him to the war. Gordon told him if he would reflect a little he would be sorry for what he had done; to which he replied, after reflection, that he was sorry, and if it were to do over, he would not do it for ten thousand dollars in gold. Defendant ordered a negro to go after two doctors, naming them. Gordon thought him as sensible as he ever saw him, although under the influence of liquor.

At the committing trial, the defendant made a statement, in which he said that deceased, in about half an hour after he left the house, returned, and dinner was prepared for him; that they went to the table together, and while deceased was eating, he abused defendant about not going to the war, saying that all men of his age had to go; at which he, defendant, became very angry, and going out and getting an axe, he, without any intention of killing deceased, struck him on the head one lick with the flat part of the axe. He said he went out to get something to strike with, and the first thing he saw was an axe, and he gathered that; that he was intoxicated at the time, and that his memory was not clear as to all the circumstances. He also said that prior to this occurrence, he and deceased had always been friendly; and that before the blow was given, the deceased cursed and abused him, and he finally told deceased he must stop it— that he could not stand the like in his own house.

The Court, after charging the jury on homicide, its various grades and degrees, on persons capable of committing crimes, and reading to them from the Code on the subject of drunkenness, added on this subject as follows:

"Much importance has been attached to the decision of the Supreme Court, in the case of the *State vs. Jones*, by the counsel for the defendant, as going to show that drunkenness may be given in evidence for the purpose of grading the offence. I have carefully examined the principles as ruled in that case, and I can find no conflict between that case and the general principles already enunciated, to-wit: 'Drunkenness shall not be an excuse for crime.' In crimes or offences committed by persons under the influence of voluntary intoxication, they stand upon the same platform as sober men. The law does not intend this intoxication, voluntary induced, shall be a shield to cover, nor a sword to pierce them. It will require the same mental ingredients in a drunken man, to make up his guilt, that it does in one sober ; no more, no less. Drunkenness shall not, then, excuse, but it may be proved, as any other independent fact, to show him guiltless under the view thus presented. I give you in charge, as requested by the State's counsel, the following principles of law, as correct and applicable:

"'All men are presumed to intend the natural and proximate consequences of their action; and when a man kills another by the use of means appropriate to that end, he is presumed, drunk or sober, to have intended that end. If a party be deprived of reason by the act of God, such as occurs in the case of lunacy or idiocy or permanent insanity, he is not responsible; but this exception does not apply when he voluntarily, and of his own accord, induces temporary mental alienation by intoxicating drink.'"

The jury found the defendant guilty of murder, recommending that he be imprisoned for life.

Thereupon, the defendant moved for a new trial, because the Court erred in refusing a continuance; in holding the adjournment of the Court valid; and in the charge to the jury,—

especially in charging, as requested by the State's counsel, that " all men are presumed to intend the natural and proximate consequences of their action, and when a man kills another by the use of means appropriate to that end, he is presumed, drunk or sober, to have intended that end ; if a party be deprived of reason by the act of God, such as occurs in the case of lunacy or idiocy or permanent insanity, he is not responsible ; but this exception does not apply when he voluntarily, and of his own accord, induces temporary mental alienation by intoxicating drink.' "

The Court overruled the motion ; and this is complained of as error.

DOYAL & BECK and LYONS, for plaintiff in error.

HAMMOND, Solicitor General, for defendant.

LUMPKIN, C. J.

[1.] The first complaint made in this case is, that the Court refused to continue this case on account of the absence of Col. D. J. Bailey, who, it is alleged, had no "legal notice of the adjourned term of the Court." The defendant does not pretend that he had employed Col. Bailey as counsel in this case, or had taken any steps to procure his attendance. He was ably defended by competent counsel who represented him.

[2.] He moved for a continuance on the further ground, that he had a material witness who was absent in the army. The State proposed to admit the testimony, if the defendant would state in writing what he expected to prove by this witness. He never used this evidence upon the trial. Indeed, this conviction rests fully upon the statements of the accused made before the committing magistrate.

[3.] He objects that the Court was not legally in session, and, therefore, that there was no grand jury, summoned according to law, to indict him. True, the clerk omitted to

45

do his duty as required by the law; but we think the act was directory to the clerk, and that any failure on the officer's part did not vitiate the proceedings,—more especially as no injury was caused to the defendant.

[4.] The main complaint in the case is, as to the charge of the Court as to the drunkenness of defendant. True, the charge is taken from the decision of this Court, principally, in Jones's case, 29 Georga, and Choice's case; and we are free to admit that the Court was not altogether happy in its language. But what is the proof in this case? The deceased, who seems to have acted as enrolling officer for the militia of the third class, had started with the intention of going over to one of his neighbor's. He falls in with Mr. Wise, and complains of wanting to drink. Mr. Wise tells him to call and he will supply him. They drink three drinks together. By this time, Pittman seems to have become entirely intoxicated. He falls down to sleep—dinner comes on, and he is permitted to sleep off his drunkenness. He, after waking, goes to the dinner-table himself. Some conversation took place between the parties about the old men going into the service. Wise declares that he had killed one man already, and that neither Pittman nor all the men in Butts county could carry him to the war. It does not appear that Pittman had come to take him off. Indeed, we infer the contrary. He was on his way elsewhere when he called at Wise's house. They had been friendly. Pittman was so drunk at Wise's house that he took a nap, and did not sit with the family at the table; afterwards, when at the table, Wise says that he became abusive—so much so, that he could not stand it. Still, there was no attempt to offer any violence. At this stage of the case, Wise went out and got his axe and gave him the blows upon the head which killed him. Can this be otherwise than murder? Considering the provocation was by words only, the weapon used, that Pittman was a small man advanced in life, if the object of Wise was only to punish him, one of the chairs at the table would have seemed sufficient to have slaked his passion. But he must

go out of the room and arm himself with an axe, a weapon not only likely, but sure to produce death, and not satisfied to inflict one mortal blow, he dealt two, each of which was mortal, in the opinion of the witnesses. No doubt Wise was penitent when he saw the effects of his unbridled temper. But it was too late. Not only the famed rivers of Abana and Pharpar, but all the waters of Israel would not have sufficed to restore his victim to life.

While we admit that the charge of the Court was not as guarded as it might have been, no charge that the judge could have given, could, or ought to have changed the verdict founded on the statements of Wise himself; and if the facts could have been represented more favorable to him, he had a grown daughter present at the homicide, and in Court at the trial, who would have been called to testify.

Judgment affirmed.