## LUBY *v.* THE STATE.

1. On the trial of an indictment for murder, the following charge to the jury was given: "In this case the State relies, in part, upon what is known in law as confessions. Confessions are among the highest grades of evidence, because it is presumed that no man will confess a crime that he is not guilty of; it is not human nature for a man to confess to something that he is not guilty of; and for that reason the law makes confessions among the highest grades of evidence." In the same connection, the court submitted to the jury the question as to whether there was any confession at all, and, if so, whether it was free and voluntary, and instructed them that confessions should be scanned with care, and that a confession alone was not sufficient to authorize a conviction. *Held,* that while the above-quoted extract from the charge was erroneous, it is not, in view of the other instructions given, cause for a new trial in a case where it appears beyond doubt that a free, voluntary, and unequivocal confession of guilt was made, that the accused introduced no evidence in his behalf at the trial, that in his statement to the jury he did not deny the making of the confession, and that the statement itself was practically an admission of guilt.

2. A charge upon the law of circumstantial evidence, argumentative in its character, and calculated too strongly to impress the jury as to the probative value of such evidence, should not be given; but so doing is not cause for a new trial in a case of the nature above indicated. Especially is this true when it clearly appears that the guilt of the accused was thoroughly established by evidence both circumstantial and direct.

3. The charge of the court was erroneous and subject to criticism, not only as to the matters dealt with in the preceding notes, but also in some other less important respects; but this is such a plain and clearly proved case of murder, and the verdict of guilty is so manifestly right, this court will not reverse the judgment denying a new trial. ATKINSON and COBB, JJ., dissenting.

Argued October 12, — Decided November 15, 1897.

Indictment for murder. Before Judge Sheffield. Early superior court. April term, 1897.

*G. D. Oliver, J. S. Sherman* and *R. H. Powell,* for plaintiff in error.

*J. M. Terrell, attorney-general,* and *J. R. Irwin, solicitor-general,* contra.

LITTLE, J. The plaintiff in error was indicted in the superior court of the county of Early, for the murder of Flora Elizabeth Luby, his wife. He was tried, and the jury rendered a verdict of guilty. He made a motion for a new trial, which was overruled by the presiding judge. He excepted, and we are to determine whether the judge below committed error in overruling the motion. There are eight grounds set out in it. The first two are, that the verdict is contrary to the evidence, and without evidence to support it; and that the verdict is contrary to law. The remaining grounds are based on extracts from the charge made to the jury on the trial of the case. The full charge is not in the record. As to the first two grounds, we are all clearly of opinion that the verdict of guilty was the only one which any jury capable of understanding evidence could have rendered. We are equally as clear that the verdict is not contrary to law, but is amply supported by every principle of law made to punish one who is guilty of murder. But notwithstanding the estimate we put upon the merits of the case, as shown by the record, it is not without difficulty that we are able to affirm the judgment of the court below. Two of our brethren, while fully conceding the atrocious character of the

circumstances proved in this case, and the fact that no other verdict could have been rendered by the jury than that of guilty, are constrained, under their views of the effect of certain parts. of the charge given to the jury, to dissent from the conclusions. of the majority.  We have given the case careful, and indeed laborious consideration, because of the fact that, under our law prescribing the punishment for murder, it is in the discretion of the jury trying the case, when they return a verdict of guilty,. to recommend the imprisonment of the defendant in the penitentiary for life.  Penal Code, § 63.  We all agree that some of the charges of the court contain manifest errors; and were it a doubtful case, or even a case where there was any conflict in the evidence, none of us would hesitate to award the plaintiff in error a new trial because of such errors.  As it is, the naked question is presented to us, whether in a case where the jury could reach no other conclusion but that the defendant is guilty, where there is no conflict in the evidence, a new trial should be awarded because of these errors in the charge of the court.

1. The first assignment of error relating to the charge complains of the following instructions on the subject of confessions: "In this case the State relies, in part, upon what is known in law as confessions.  Confessions are among the highest grades of evidence, because it is presumed that no man will confess a crime that he is not guilty of; it is not human nature for a man to confess to something that he is not guilty of, and for that reason the law makes confessions among the highest grades of evidence."  The language quoted is not happy in expression. It classifies the evidence as to weight, which ought not to have been done; it is argumentative in its character, and therefore inappropriate.  One of the objections to it was, that it assumes that a confession was made.  On this ground, we overrule the objection, because the brief of evidence clearly shows that beyond all doubt confessions were freely and voluntarily made; and so far as the subject of the charge is concerned, the court was right to charge the law of confessions.  It is objected, too, that it is argumentative.  This is true, and in this the charge was erroneous.  While argumentative charges are generally erroneous, they are not always prejudicial; nor will they in all

cases authorize the grant of a new trial. As to the main proposition charged, viz., that confessions are among the highest grades of evidence, such has been held by this court to be the general rule. See *Cook* v. *State*, 11 *Ga.* 59; *Eberhart* v. *State*, 47 *Ga.* 609. This rule, however, could in no event be treated as sound unless the confession was clearly proved and shown to be absolutely free and voluntary. The part of the charge which is argumentative, is on the question of the weight of confessions, and was given to illustrate the principle of law charged. If the principle is correct, the argument used to enforce it, while erroneous and improper, does not necessarily prejudice the case against the defendant. In the case of *Pascal* v. *State*, 77 *Ga.* 596, which was a conviction of murder with a recommendation to mercy, a motion for a new trial was made on the ground that a portion of the charge seemed to withdraw from the consideration of the jury the question of whether the confession was voluntarily made. The court there says: "This part of the charge we are not satisfied with, and if the case were a close one, it might operate to reverse the judgment of the court below; but the verdict of the jury in this case was demanded by the evidence, and whatever errors may have been made in the charge excepted to, it did not work any injury to the plaintiff in error." The portion of the charge in the present case now under consideration must be taken in connection with the explanatory note of the judge, to the effect that the charge as an entirety submitted the question as to whether there was a confession, whether if there was one it had been freely and voluntarily made, and also contained instructions that confessions should be scanned with care, etc., and were not alone sufficient to authorize a conviction. With this explanation, it does not appear that the particular portion of the charge now being dealt with, though erroneous, prejudiced the case against the prisoner. This is so because there is no room to doubt his guilt.

2. The second attack upon the charge relates to the following portion thereof, in relation to circumstantial evidence, which we can not approve: "I charge you that circumstantial evidence when well made out and well running together is as

good to convict on as any other kind. The great majority of cases that come into court can only be reached by circumstantial evidence. I mention this because I have heard jurors and people say that they would not convict on circumstantial evidence. The class of men that rob your houses or steal your horses or cattle, or other property, or assassinate you when no man looks, would have to go free if you refuse to convict on circumstantial evidence. This is the only way the law has to get at such men." It must be admitted that this part of the charge is highly argumentative, and very objectionable. It is certainly erroneous. It must also be admitted, however, that under the law the effect of circumstantial evidence, when such is consistent and connects the defendant with the crime to the exclusion of every other reasonable hypothesis than his guilt, is to authorize a conviction, as much so as would be authorized by positive testimony. It does not seem, therefore, that the charge contains an objectionable proposition of law. The manner of the charge, the illustrations given, the reference to what the judge had heard people say, etc., can not on any ground be supported. In the case of *Newman* v. *State*, 26 *Ga.* 637, in delivering the opinion of this court, Judge McDonald used this language: "Juries generally are too reluctant to convict on circumstantial evidence. While it is true that a man ought not to be punished for an offense of which he is guiltless, the jury ought not to pronounce the accused innocent for the want of positive evidence of his guilt. . . The most atrocious crimes are contrived in secret, and are perpetrated generally under circumstances which preclude the adduction of positive proof," etc. While couched in different language, the argument there used is the same as that here employed by the trial judge. On the trial of the case of *Jones*, who was indicted and tried for murder in the superior court of Richmond county, the presiding judge, in his charge to the jury, pronounced a eulogy on Judge McDonald, and in direct connection therewith read from his opinion in *Newman* v. *State*, supra, as a part of his charge, the extract quoted. Jones was convicted; a motion for new trial was made and overruled; and this court, in reviewing the motion for new trial, held that so much of the charge

.as was embraced in the words, " Juries generally are too re-luctant to convict on circumstantial evidence," was erroneous, but that the error thus committed was not sufficient to author-ize the grant of a new trial. (65 *Ga.* 506.) If we follow the ruling made there, the charge now under review will not authorize the grant of a new trial. Especially is this true when, added to the circumstantial evidence in this case, there is positive evidence of guilt in the form of confessions. In re-lation to this ground, the judge certifies that this is only an ex-tract from the charge on circumstantial testimony. While we will presume that the remainder of the charge on this subject was correct and legal, the extract excepted to and set out in the statement of the case is clearly argumentative and illegal.

3. As we understand the third assignment of error, the court in fact charged the jury in the language of the code, that words, threats, menaces, or contemptuous gestures shall in no case free the person killing from the crime of murder. The charge in these words was correct, and in one view of the case authorized; and we are unable to agree with counsel for plain-tiff in error that the court committed error in so charging.

The fourth assignment of error is, because the court charged the jury that to beat a wife, or strike her, or whip her, is un-lawful under any and all circumstances, and if a man kill his wife as a result of the beating, although he may have no in-tention of killing her, he is guilty of the crime of murder: provided, the natural tendency of his acts was to destroy her life. The specific assignment of error to this part of the charge is, that it tends to exclude from the minds of the jury the consideration of all other grades of homicide except that of murder. We do not see the force of this objection. It is undoubtedly true that a man has a right to defend himself against the assaults even of his wife, and that he would have a right to take her life to prevent the commission of a felony upon his person. These principles of justification extend to all persons, even to a husband as against the attack of a wife. Evidently, however, the charge of the court, properly con-strued, meant to lay down the proposition, that a man had no right to strike his wife, to whip her, or to beat her, by way of

chastisement, or in mere wantonness, or cruelty; and that
such acts on his part were unlawful; and that though in such
whipping or beating he had no intention to kill her, yet if the
natural tendency of such acts was to destroy her life, he would
under those circumstances be guilty of murder. As thus con-
strued, we approve the proposition laid down by the judge.
Penal Code, § 104. We are of opinion that the language used
in this part of his charge does not bear the construction placed
upon it by counsel for plaintiff in error, and that the judge
did not by this charge deprive the plaintiff in error of the
benefit of the law relating to self-defense; because it is used
in connection with the statement that the defendant did not
contend (in the court below) that his act was justifiable, and
we understand here also that there was no such contention.

The fifth assignment of error is, because the court charged
the jury, "that the law does not recognize opprobrious words
made by the wife to her husband as sufficient cause for him to
strike her and kill her; it does not in any such case make it
lawful for a man to strike his wife. The law does not recog-
nize any such excuse for a man to whip his wife." We find
no fault with this charge, as applied to the undisputed facts
of this case. Opprobrious words or abusive language may be
given in evidence on the trial of an indictment for assault, or
assault and battery; and such words or language may, or may
not, amount to justification, according to the nature and ex-
tent of the battery. Penal Code, § 103. Here the plaintiff in
error was on trial for the homicide of his wife; and we are
clear that any opprobrious words or abusive language which
she may have used to him could not justify the homicide, nor
could they have the effect to reduce the offense below the
grade of murder. They could not be sufficient to justify a
passion which would cause him to take her life.

The sixth assignment of error is, because the court erred in
charging the jury upon the effect of drunkenness as an excuse
for crime. In the main the charge on this point was correct,
although the application of the principles in the latter part of
the extract excepted to is subject to criticism, and was errone-
ous. The specific assignment, that the facts in the case did

not authorize the charge, we overrule. The evidence was amply sufficient to authorize instructions concerning drunkenness as an excuse for crime. As before said, however, the application of this principle, as made by the judge in the extract given, seems to have been error.

These, in brief, constitute the grounds of the motion for a new trial. As will be seen, we find errors in the charge of the court; errors which we have said, and now repeat, if the case were doubtful or if the evidence touching the commission of the offense were in conflict, would require at our hands the grant of a new trial. The majority of the court have arrived at the conclusion that, notwithstanding these errors, the judgment of the court below should be affirmed. The evidence was both positive and circumstantial, positive when relating to confessions, otherwise circumstantial. It appears that Luby and his wife occupied a camp at the mouth of a creek on the banks of the Chattahoochee river; that on the afternoon preceding the homicide, he with others procured a quantity of whisky of which he drank freely and came under its influence; the parties separated near his camp. That night very late he came to the house of one of the witnesses, distant a mile or more, and told him there was a corpse at his camp, and that it was his wife's; and asked the witness to go down there with him. The witness, however, declined to go before the morning. Luby told this witness (who was with him in the afternoon) that after they had separated and he had gone to the camp, he lay down and went to sleep and slept until after night; when he woke up he called his wife, and getting no answer he went to his boat and found her dead, with her head partly in the water. He told this the night he went to see this witness, and also the morning after, when the latter visited his camp. On visiting the camp in the morning, the witness saw blood on the mattress, but did not examine the body of the woman. Another witness testified, that about three o'clock in the morning Luby came to his house and asked him to go to the camp, and told him that his wife was dead; he desired the witness and another to go and stay until he could get some others to go. He told this witness that his wife must have been sick, and had a fit and "fell and killed

herself." This witness went to the camp with Luby, and when he reached the camp, about half of the body of the woman was under the tent and half out. The witness saw a large hole in the back of the head of the dead woman, and there were other bruises on the head; around the neck were more bruises, which seemed to have been made with hands; her hair was damp. To this witness (Thornton) Luby told, "he felt himself guilty," and that he was at his row's end, and that he did not know what to do, and was ready to die and go with her." This witness further testified that he examined the boat, that the water in the boat was bloody, and that there was blood on the mattress near the woman's head, and some on the other side of the tent on some clothes which she did not have on, and a little on the clothes she had on; that the wound on the back of her head was where the head and neck joined. This witness lived about a mile and a half from the camp. He also testified that the ground was torn up a good deal in front of the tent, as if there had been a scuffle there, and on the east side it looked like there had been a big scuffle. The sheriff testified, that he talked with Luby in regard to the death of his wife; that Luby told him her name; that he arrested Luby about eleven miles from Blakely during the time the coroner's inquest was being held; that Luby told him, in reply to a statement which the witness made to him, that he (Luby) was in a bad scrape, "Yes, a man will do things that he ought not to." Witness stated that Luby called him off behind the house and told him about it, that there were no threats made or inducement offered. He told this witness voluntarily that "he was guilty, that it slipped up on him." He said that he hit her one lick too many and too hard; he said that he was drunk or he would not have done it. Witness testified to the wound on the back of the head; it was a bad-looking wound; the skin was knocked loose; the body was bruised all over; it looked like it must have been a very heavy lick; couldn't tell what she was struck with; there were bruises on her arms, hands, and neck; her eyes looked bruised; she was bruised nearly all over, except right in front. There were finger-scratches on her neck, looked like they had been made with finger-nails on each side. Luby stated to him that

he did not know how the hole came in the back of her head; that he had whipped her the night before with a switch. The physician who examined the body testified, that he was present at the coroner's inquest; that on the back of the woman's head was a wound where the skin had been knocked loose; that she was bruised badly about the middle of her head and all over her face, all over her neck were finger-scratches, and on her neck was a wound about an inch long that was made with a blunt instrument; that she seemed to have been whipped with a switch a day or two before; her waist and arms were all scratched up; death resulted from the wound on the back of her head and neck. The wounds on the breast, face, arms and legs seemed to have been made with a switch; those on the neck and hands seemed to have been made with a man's fingers. In answer to a question, this witness said he did not think the woman could have fallen in such a way as to have produced all the wounds at once. The wound on the back of her head did not fracture the skull, and may have been made with a glancing lick. The witness further testified that Luby came into the room where the jury was, and the witness heard him say that he killed her; no one on the jury spoke to him. Another witness (Naramore) testified that he saw some of the wounds on the body of the woman; and, after testifying to the appearance of the wounds, stated that he heard Luby say that he did it. He saw and examined the wound on the back of her head; it was one or one and a half inches long; the skin had left the skull. This witness testified that the wound might have been made by the woman's having fallen in the boat.

The defendant in his statement said, that he and his wife had a quarrel, that she had a little iron-handle knife in her hand and made at him, that he slapped her, and she said she would leave, and cursed him. He said he had whipped her three times about calling him offensive names. He said that she jumped into the boat and shoved off; that he jumped into the water and pulled it back to the bank, and her heels struck something; that he then went back to the tent and lay down. He said, not thinking that the lick would kill her, he went to sleep. He woke up some time in the night, and found she was

not on the mattress with him, called her and she did not answer; he then got up and went to the boat, and found her with her head lying partly in the water, he stooped down to pick her up, and slipped, and her head struck the plank of the boat, and he said, "My God, if you are not dead, I reckon I have killed you." He took her up and started to the tent, and her feet dragged on the ground to the tent; with his lantern he began to examine her, and this is the way the blood came in the tent. He then folded her hands across her breast, and left to get some one to come there. "I told the boys I was in a fix." He then made arrangements for her coffin. He said, "They asked me if I had killed her; and I told them I must have, but it was accidental. He further says: "I was full of whisky at the time; I could have run off if I had wanted to; I didn't do it purposely. I could have fastened a chain around her and thrown her into the river; but I did not want to do that, as I did not intend to kill her. If I did it, I did not mean to do it." Another witness (Castellow) testified, that he heard Luby say that he did not know exactly how he did it, but he caught her in the boat, and struck her and knocked her down, that he picked her up and started to the tent with her, and that she died before he could get out of the boat with her; and he heard Luby tell Mr. Black the same thing.

These are, in brief, the details of the case as given by Luby, and as shown by the circumstances detailed by the witnesses. It must be admitted that, in any view which can be taken of the case, Luby killed his wife, and horribly mistreated her before doing so. His own statement shows that she endeavored to get away, and had taken to a boat and pushed away from the bank; that he was so grossly under the influence of liquor as not to have a clear conception of how the fatal wound was inflicted, but that he struck her "one lick too many and too hard." As a legal proposition, under these circumstances, should a new trial have been granted by the court below, solely on the grounds of the errors in the charge as before pointed out? At common law, new trials were not granted in cases of felony, a recommendation to pardon affording the remedy for one whose conviction should not stand. 16 Am. & Eng.

Enc. Law, 602; 1 Roscoe's Criminal Evidence, 341. Under our constitution and laws, the power of judges to grant new trials in cases of conviction is preserved. By the Penal Code, § 1060, it is provided that a new trial *may* be granted in all cases where the presiding judge may deliver an erroneous charge to the jury against such applicant, on a material point. It will be noted that this language is permissive, and not mandatory, because, as we shall presently see, there are cases in which it will not be proper to grant new trials where erroneous charges were given to the jury. We have access to a great many reported cases where new trials have been refused in cases where confessedly erroneous instructions were given to the jury. These have occurred both in civil and criminal cases; the doctrine being, that there is no considerable difference between the rules applicable to new trials in criminal cases and in civil cases. Mr. Bishop, in his work on Criminal Procedure, § 1273, says that " it is in numerous cases rather assumed than decided, that the question of whether a new trial should be granted or not depends on the same rules in criminal cases as in civil. . . But it is believed rightly, that new trials should be awarded more freely in criminal cases than in civil, and in criminal the more freely in proportion to the gravity of the punishment." Mr. Wharton, in his work on Criminal Pleading and Practice, § 793, lays down the general proposition, that any misdirection by the court in trying a case, in point of law, on matters material to the issue, is a good ground for a new trial. He further says, if the error was immaterial, irrelevant or trivial, and justice has been done, the court will not set aside the verdict, nor enter into a discussion of the question of law. On the question of the wrongful admission of evidence as cause for a new trial, he says, § 802: " Where the exceptant does not make it appear that he was or might have been prejudiced by the admission of the evidence excepted to, a new trial will not usually be granted." A further rule is laid down in 16 Am. & Eng. Enc. Law, 608, as follows: "As in civil cases, so in criminal, if it is apparent that the error complained of did no harm, a new trial will be refused." This proposition is supported by a large number of

authorities referred to under note 8. Mr. Thompson, in his work on Trials, says: "Courts of error do not sit to decide moot questions, but to redress real grievances. It is therefore a rule of nearly all the courts, that no judgment will be reversed on account of the giving of erroneous instructions, unless it appear probable that the jury were misled by them. Expressions of this rule could be multiplied almost without limit. Thus, it is said that instructions faulty, or technically erroneous, will not work a reversal of the judgment, if the jury were not misled, or if, as a whole, the case was fairly presented to them, and especially if their verdict is obviously correct." 2 Thomp. Tr. § 2401. Further, in section 2402, he says: "Of course it can never be said that the jury were misled by the giving of erroneous instructions, where they have reached the correct result by their verdict. Accordingly, it is the practice of most of the courts, before passing upon exceptions to instructions, to look into the evidence and see if the verdict was right; and if it is found to be so, the court will look no further. The rule of these courts is, that a good verdict cures all errors in the intermediate steps by which it was reached." This proposition is supported by very numerous authorities cited under note 4. He further says: "In England it is no ground for a new trial that the judge misdirected the jury, unless it is shown that the jury were thereby induced to form a wrong conclusion. If the revising court sees that *justice has been done* between the parties, they will not set aside the verdict, nor enter into a discussion of the questions of law." Id.

In 3 Graham and Waterman on New Trials, 862, the rule is thus laid down: "Notwithstanding the misdirection, a new trial will never be granted, if justice has been done, for two reasons: First, if the verdict be correct notwithstanding the misdirection, the erroneous instruction has been practically disregarded by the jury, and it is tantamount to no such instructions having been given. Second, the correct result already having been obtained, a new trial would be superfluous; and in applications of this kind, therefore, the main subject of inquiry is as to the verdict, for if that be correct there is nothing to be relieved against." Supporting this rule

are numerous cited cases, among them the following: The
Supreme Court of Maine held, that admitting a question of law
had been erroneously submitted to the jury, the court would
not for that cause disturb the verdict, provided they were satis-
fied it was correct. 7 Greenleaf, 442. In 4 Day, 42, the court
says: "Whether the charge of the court was perfectly correct,
in point of law, it is unnecessary to determine. Justice is done
and a new trial ought not to be granted." Many cases cited
to the same effect are noted in Graham & Waterman, supra,
863–9. The cases above cited are civil cases. We have here-
tofore seen, however, that the same rule applies to criminal
cases, with the sole qualification that in the latter perhaps
more liberal rulings would be supported. In Clark's Criminal
Procedure, 498, the conclusion of the author, arrived at from
a consideration of a large number of stated cases, is: "A new
trial may also be granted for prejudicial errors in the charge
of the court, or because of the erroneous admission or exclu-
sion of evidence, though generally not in such a case where
there is ample competent evidence to sustain the verdict." It
will be noted that, under the rule just quoted, the errors in the
charge of the court are alluded to as *prejudicial* errors, and the
doctrine is that even then they will not generally be ground
for a new trial where there is ample competent evidence to
sustain the verdict. In the case of Hall v. State, 8 Ind. 439,
where there was a motion for a new trial on the ground of im-
proper instructions to the jury, the court held that the error
was no cause for reversal, because, as applied to the facts of
the case, the erroneous instructions could not have prejudiced
the defendant. In the reasoning under this proposition the
court says: "The instructions given could not have prejudiced
the defendant before the jury, there was no conflict in the evi-
dence, . . the evidence left no space wherein the jury could
locate a doubt." In 18 Conn. 320, the court says: "The rule
is a familiar one, that a new trial will never be granted unless
injustice was or might have been done on the former trial."
The New York Court of Appeals, 2 Comstock's Rep. 203, says:
"The law concerning bills of exception is the same in criminal
as it is in civil cases"; citing 3 Hill, 194. The Supreme Court

of Mississippi, in 44 Miss. 732, declares, that "the verdict of a jury will not be disturbed for any supposed error in instructions, where it is manifestly right on the evidence, and it does not appear that the defendant was prejudiced by any one of the charges of the court."

We have referred to the cases enumerated above, and to the rules which they respectively lay down, to justify our ruling in this case; and these, with numerous other cases, seem to us to establish the proposition, that the great object which a court of review has in considering motions for a new trial on the ground of improper instructions to juries, is to see if justice has been done to the defendant. On one side are to be considered his rights, under the provisions of law, that he shall have a fair and impartial trial; and on the other hand it is the *duty* of courts to protect society, to enforce the law, to punish criminals. If the error complained of be one which tended to destroy any right of the defendant, a new trial should be granted. If on an examination of the evidence in the case the court should be satisfied that the result of a new trial, by qualified jurors, would and ought to be the same, there is no reason or principle which would demand a new trial. Our own court has in a number of instances referred to this question. In the case of *Wise* v. *State*, 34 *Ga.* 348, complaint (as here) was made in the motion for a new trial as to the charge of the court on the drunkenness of the defendant. That charge was subject to criticism (as it is here), and, in the language of the court, "was not altogether happy." There Chief Justice Lumpkin, delivering the opinion of the court, said: "While we admit the charge of the court was not as guarded as it might have been, no charge that the judge could have given could or ought to have changed the verdict, founded on the statements of Wise himself." In the case of *Braswell* v. *State*, 42 *Ga.* 609, this court ruled that "when the facts of the case show clearly that the act of the killing was without any legal provocation, and in fact constituted the crime of murder under the law, *held*, that this court will not interfere to set aside the verdict for the charge of the court, though expressed in language too strong against the accused, if from all the evi-

dence this court is satisfied with the verdict." . In the case of *Tucker* v. *State*, 57 *Ga.* 503, this court, speaking through Warner, C. J., says: "The charge of the court was objectionable in regard to the statement of the prisoner, in so far as it attempted to show by argument that his statement was not true, from the evidence. But notwithstanding the court may have erred in its charge to the jury, still the verdict was right under the evidence and the law applicable thereto, and we will not disturb it."

Again, in the case of *Hill* v. *State*, 63 *Ga.* 585, in dealing with a motion for a new trial on the ground of an erroneous charge, Bleckley, Justice, delivering the opinion of the court, says: "It seems quite certain that the charge was not erroneous; but did we so consider it, we should do as was done in both *Parker* v. *State*, and *Tucker* v. *State*, that is, affirm the judgment, · the evidence being beyond all question sufficient, and the verdict indubitably correct." In the case of *Hagar* v. *State*, 71 *Ga.* 164, Chief Justice Jackson, on the question of the admission or rejection of testimony, said: "The evidence is overwhelming that the defendant is guilty; and where such is the case, even errors in the admission or the rejection of testimony, or in the charge of the court, will not operate so as to require a new trial."

We have striven to give a fair exposition of the legal principles applicable to the questions involved here, as we understand them. In applying them, with an endeavor to be just, reference may profitably be had to the teachings of some of the sages of the law. Lord Kenyon said, that "the natural leaning of the mind is in favor of prisoners, and the mild manner in which the laws of this country are administered has been the subject of complaint with some, that the judges have given way too easily to formal objections in behalf of prisoners." Chitty also remarks, that "in criminal cases where the public security is so deeply interested in the prompt execution of justice, it seems the minor consideration should give way to the greater, and technical objections be overlooked, rather than the ends of society be defeated." 1 Chitty's Criminal Law, 171.

With the law established as we have undertaken to show it

is, there are several considerations to be taken into account in determining the motion before us. We are not at all agreed that the judge below committed errors which were prejudicial to the plaintiff in error in his trial below, though the fact that these charges contained error is fully admitted. It is not clear, however, to a majority of us, that they were in any degree harmful to the defendant. The evidence against him, as we have before said, was both circumstantial and direct. The fact of the homicide came from his own lips. The manner in which it was inflicted was testified to by the wounds and bruises which the body of his dead wife bore. Not a single extenuating circumstance either appears or can justly be inferred from the record. The conclusion seems to be irresistible that it was a cold-blooded and cruel murder. Prior to the homicide, when sober, by his own account, he whipped the deceased severely a number of times with a switch, evidences of which her bruised body bore after death had given rest and peace to his victim. The only pretense of an excuse which he tenders for the homicide is that he was drunk. Under such circumstances, to what is he entitled? We answer, the swift retribution of the law. Whether the jury would or would not, in another trial, recommend him to mercy, we do not know. We do know, so far as human knowledge can be acquired from circumstances and by reasoning from admitted facts, that he is guilty. Our law declares the punishment for murder to be death. The privilege is given to the jurors, who pass upon the facts in all cases, to restrict this punishment, in their discretion, to imprisonment for life. They did not do so in this case. Can it be said that they did not, because of the errors in the charge of the court? We think not. Whether the jury would or would not reduce this punishment upon another trial of the case as we view it, ought not legally to influence us. On this line, see *Perry* v. *The State*, ante, 365. We are to take the verdict as it comes to us now and here and judge of its correctness as it is. In the rendition of *that* verdict, were his rights prejudiced by errors which are apparent and which we have discussed? We think not. The verdict was right. It was in all respects fully justified by the evidence. There was no con-

flicting evidence; and in such a case it ought not to be disturbed. If the fact of the homicide was in question; if the evidence of the defendant's guilt under the law could be doubted; if the evidence on any material point was in conflict, then we could see how the charges excepted to *might* influence the mind of jurors seeking for the truth of the case, so as to give undue prominence to the weight of the circumstances proved. But in the absence of such, we are unable to conclude that in his trial the prisoner was prejudiced or put at disadvantage by the charge of the court, so as to affect the verdict. The jury judged him by his acts, and their finding was correct under the evidence. Therefore, the judgment of the court below overruling the motion for new trial is

　　　　　*Affirmed. All the Justices concurring, except*

ATKINSON and COBB, JJ., dissenting. For the reasons assigned in the dissenting opinion in the case of *Perry* v. *State,* ante, 381, we dissent from the judgment in this case.