## 2573. SPENCE *v.* THE STATE.

1. A motion in arrest of judgment in a criminal case must be made during the term at which the trial was had and the sentence was imposed, and it must be predicated on some defect which appears on the face of the record or pleading. In a criminal case a defect on the "face of the record" exists when there is some inadequacy in the allegations of the indictment, not cured by the verdict, or where the verdict does not conform to the charge in the indictment. Relatively to a motion in arrest of judgment, "the face of the record" does not include the charge of the court or the brief of the evidence approved and filed as a part of the record in a motion for a new trial.

2. On the trial of an indictment for murder, the jury may convict of any lesser grade of homicide; and a verdict for voluntary manslaughter, in accordance with the evidence, would be a legal verdict, although the court did not instruct the jury on the law of voluntary manslaughter. The validity of a verdict is to be tested by the law as it is written, and not by the law as it is given in charge.

3. The evidence in this case demanded a verdict of murder. The statement of the defendant, if true, did not show justifiable homicide. As the verdict of voluntary manslaughter was more favorable to him than was authorized by the evidence and the law applicable thereto, he is not in a position to demand another trial.

Conviction of manslaughter; from Mitchell superior court—Judge Park. February 14, 1910.

Argued May 3,—Decided May 12, 1910.

Rehearing denied July 5, 1910.

*Pope & Bennet, Spence & Bennet, Stanley S. Bennet, S. A. Roddenbery, J. J. Hill, Cox & Peacock,* for plaintiff in error.

*W. E. Wooten, solicitor-general,* contra.

HILL, C. J. J. H. Spence was indicted for murder, and on his trial was convicted of voluntary manslaughter. During the term of court at which he was tried, he filed a motion for a new trial, which was heard and overruled in vacation at the time to which the hearing had been duly adjourned by the court. Sentence was pro-

nounced on the defendant during the term of the court in which he was tried. In vacation, on the day of the hearing of the motion for new trial, the defendant for the first time filed a motion in arrest of judgment, which the court overruled, and the defendant excepted. The motion in arrest of judgment attacks the validity of the verdict, on two grounds: (1) Because the only charge in the indictment was murder, and the court did not submit to the jury any issue as to whether the defendant was guilty of manslaughter, and no part of the law of manslaughter was charged in the case; and for this reason the verdict of manslaughter was wholly illegal and amounted to an acquittal of the defendant on the charge of murder. (2) Because the evidence in the case did not in any view sustain a verdict of voluntary manslaughter, and the court and counsel for both sides took the position that there was no manslaughter in the case. The motion in arrest of judgment further recited that it was filed after the brief of the evidence and the charge of the court had both been approved and filed and had become parts of the record in the case.

1. We think the court did right in overruling the motion in arrest of judgment. In the first place, a motion in arrest of judgment was not the proper procedure, if there was any merit in the objection made to the verdict. A motion in arrest of judgment will reach any defect apparent on the face of the record, not cured by the verdict, to which a general demurrer could have been successfully interposed before arraignment. It is also proper procedure where the verdict is for some offense not covered by the charge made in the indictment. As used in this connection, the expression "the face of the record" means, in a criminal case, the indictment and the verdict; a defect on the face of the record exists when there is any inadequacy in the allegations, not cured by the verdict, or where the verdict does not conform to the charge in the indictment. It is not, in our opinion, broad enough to reach the charge of the court or the brief of the evidence. These are parts of the record subsequent to the trial; and if the verdict is contrary to the charge of the court for any reason, or contrary to law for any reason, or is without evidence to support it, it is ground for a new trial, and not for arrest of judgment. But even if we are not correct in the position just taken, the motion in arrest of judgment was filed too late. A motion in arrest of judgment "must be made during the term

at which such judgment was obtained." Civil Code, §5363. In this case the motion was not filed in term, with an order taken to hear it in vacation, as might probably have been done; it was not filed until vacation, and until after sentence had been imposed by the court. This motion should properly be made before sentence. 1 Bishop on Criminal Procedure, §1284. As the judgment or sentence of the court is in the breast of the court and subject to be changed by it during the term, the motion in arrest may probably be made after sentence has been actually passed, but it can not be made after the sentence has been passed (unless it relates to the sentence itself) and after the court has adjourned. The court has no power over the judgment after the term in which it was rendered has passed.

2. The objections made to the verdict by the motion in arrest of judgment constitute one of the grounds in the motion for new trial. We think the contention that the verdict is illegal because the court did not charge the law of voluntary manslaughter is unsound. It is true the indictment was for the offense of murder, but the higher charge, as is well settled, includes every lesser offense embraced therein. The indictment, therefore, was not only for murder, but was for all the lesser grades of homicide. While it is well established that the jury, although judges of the law and the facts in criminal cases, must take the law from the court, yet it has been frequently held by the Supreme Court that if the trial judge should erroneously instruct the jury as to the law, and the jury should nevertheless find a correct verdict under the evidence and the law applicable thereto, the verdict will stand. In other words, the validity of the verdict is to be tested, not by the law as given in charge, but by the law as it is. Where the verdict is right in itself, as being in accordance with the evidence and the law applicable thereto, it ought not to be set aside on account of an erroneous instruction given by the court to the jury. Much less should it be disturbed because the court did not fully instruct the jury as to the law applicable to every phase of the evidence or reasonable theory deducible therefrom. *Johnson* v. *State,* 14 *Ga.* 55; *Wellborn* v. *Weaver,* 17 *Ga.* 267 (63 Am. D. 235) ; *Potts* v. *House,* 6 *Ga.* 324 (50 Am. D. 329). An exception to the verdict because contrary to the charge of the court is immaterial, unless it is also contrary to law. If the jury can disregard an erroneous instruc-

tion, a fortiori it has the prerogative to find a verdict in accordance with the evidence, although the judge may fail to instruct as to the law applicable to that theory of the evidence which the jury finds to be the truth. In this case the court charged fully the law of murder and justifiable homicide in self-defense. The defense relied upon was justifiable homicide in self-defense. The contentions of both sides were fairly submitted. But the jury did not agree with either contention. What was the jury to do? They could not conscientiously convict of murder, or acquit. They could have asked the court for instructions on the law of manslaughter; but if they believed that a verdict of voluntary manslaughter was the only just and true solution of the question of fact, why could they not so find? And if this finding is authorized by the evidence, it would be a palpable perversion of the purpose of a trial by jury to hold that a righteous verdict in accordance with the evidence should be set aside as illegal because the jury found the truth unaided by court or counsel, or even contrary to the views of the law entertained by both.

The foregoing remarks are based on the assumption that the facts warranted a verdict of manslaughter. But from a study of the evidence and the defendant's statement, we are convinced that the law of manslaughter was not really involved. It is conceded that the evidence for the State demanded a verdict of murder. There was no evidence for the defendant. It is insisted that his statement to the jury made a case of justifiable homicide in self-defense. We do not think his statement makes a case of self-defense, actual or apparent. Construed in connection with the evidence, or considered alone, the statement shows that the killing was caused by opprobrious words. Whisky and abusive language aroused ungovernable rage, and murder was the result. There was no menace or threat accompanying the vile epithets used by the deceased to the defendant; there was nothing in the conduct of the deceased in connection with his abusive language to justify a reasonable fear on the part of the defendant that his life was in danger, or that a serious personal injury was about to be committed on him; nor was there any "appearance of imminent danger." Passion was aroused by words alone, without threats, menaces, or any manifest intention to inflict bodily injury. The statute declares that "words," even when accompanied by "threats, menaces or contemptuous ges-

tures, shall in no case be sufficient to free the person killing from the crime of murder." Penal Code, §65. What we here hold is not intended to controvert the doctrine announced in the *Cumming* case, 99 *Ga.* 662 (27 S. E. 177), and frequently applied by this court, that while words, threats, menaces, or contemptuous gestures may not be sufficient to mitigate a homicide from murder to manslaughter, yet these things may, in some cases, arouse that reasonable fear which will justify the killing.

The facts of the homicide, as narrated by the defendant in his statement to the jury, in no substantial particular distinguish this case from *Malone* v. *State,* 49 *Ga.* 217. See also *Fallon* v. *State,* 5 *Ga. App.* 659, 663 (63 S. E. 806). We do not deem it necessary to give the evidence or the statement in detail. It is enough to state our conclusion. The evidence demanded a verdict of murder; and the statement of the defendant, even if believed by the jury, shows no fact, or reasonable inference from facts, to justify or warrant an acquittal. The defendant, therefore, is not in a position to demand another trial. He can not be heard to complain of a verdict strongly on the side of mercy, and more favorable to him than was authorized by law, under the evidence or his statement. *Robinson* v. *State,* 109 *Ga.* 506 (34 S. E. 1017). The opinion of the evidence expressed above makes it unnecessary to consider or decide any of the objections made to the charge of the court. If there were any inaccuracies, they were harmless.

*Judgment affirmed.*

### ON MOTION FOR REHEARING.

POWELL, J. At the rendition of the original opinion in this case, I intended to mark myself as specially concurring, but neglected to do so. While I do not fully agree to all that is there said, I can not escape the conclusion that the judgment of affirmance is correct; and it is deemed expedient that I express, on the application for rehearing, the views which to my mind seem controlling in the case. And I am authorized to state that my colleagues agree with me as to the principles here announced.

The reason that this court should not grant a new trial in this case is not that the record does not show error, but because, in our sincere opinion, the error shown is, so far as the complaining party is concerned, harmless. The jury in every case ought to follow the charge of the court as to the law; it is error for them not to do so;

but whether a party will be allowed successfully to claim a new trial on account of the jury's delinquency in this respect depends upon whether any legal hurt was to him thereby occasioned. If the jury's departure from the law as given in charge has been solely and unequivocally in the direction of favoring the complaining party, it is not only fair and proper that he should not be allowed successfully to assign error thereon, but we are sure that the uniform usage of the courts forbids that he should do so.

In this case, if there were any fair theory of the evidence or of the defendant's statement upon which an upright and intelligent jury could acquit him under the law, the verdict of manslaughter should be set aside. But there are only three classes of homicide,—murder, manslaughter, and justifiable or excusable homicide. There is no contention that there was not a homicide; and in our judgment there was no rational view of the evidence (including the defendant's statement) from which it could be said that the killing was justifiable or excusable. The verdict was for manslaughter. As an upright and intelligent jury could not acquit under the most favorable view of the facts as applied to the law, it follows, from logical necessity, that unless the defendant was guilty of manslaughter (the offense of which he was convicted) he was guilty of murder; and that the only result flowing from the error of the jury in finding manslaughter, when they had not been given that offense in charge, was that the defendant was found guilty of the lower of the two offenses remaining in the case; and we can not concede that he should be allowed successfully to assert such an error as a reason for sustaining *his* motion for a new trial. It can not reasonably be the duty of the court to order a new trial of the case to see if another jury would acquit, when, under the law and the facts, no such verdict could properly be rendered. The end and object of courts is to give opportunity that justice may be judicially administered. In our opinion they have no duty resting upon them of taking any affirmative step, even in favor of a defendant in a criminal case, which could have no other apparent object than to give the party an opportunity to see if the jury could not be induced to render a verdict which neither the law nor any reasonable construction of the facts would authorize.

We understand that in all cases an error (however egregious) pertaining to the trial of the case is to be considered as harmless,

when, if the error had not been committed, the complaining party could not, under the application of the law to the most favorable theory of the evidence (including the defendant's statement in a criminal case), have been properly awarded a more favorable verdict. The suggestion of able counsel for the plaintiff in error is that this is in effect what was held in *Perry's* case, 102 *Ga.* 365 (30 S. E. 903), and *Luby's* case, 102 *Ga.* 633 (29 S. E. 494), both of which cases were overruled in *Glover* v. *State*, 128 *Ga.* 1, 7 (57 S. E. 101). We heartily agree with them that the *Glover* case correctly states the law, and that the *Luby* case and the *Perry* case were so strikingly wrong in principle as to cause their prompt overruling when they were subsequently reviewed. But we are not willing to concede that the present ruling is any reiteration of the erroneous features of the two cases criticised. In each of those cases the evidence was conflicting, and, while it was sufficient to authorize the conviction of murder and the assessment of the death penalty, did not demand that verdict; and on an errorless trial the defendant might, under the law and the evidence, have been properly awarded a more favorable verdict. Hence the errors in those cases were not harmless, within the rule above announced.

Able counsel for the plaintiff in error, in their strenuous motion for a rehearing, take as a text, so to speak, the following questions which they place upon the title page of their written motion, as filed: (1) "Can a legal verdict be rendered on the disputed issue when no charge of the court is given?" If the word "legal" is used in contrast to "erroneous," we answer, "no;" but if used in absolute or formal sense, we answer, "yes." (2) "In other words," they ask, "are jurors night-riders, Kuklux Klans, or vigilance committees, each enforcing his own idea of justice regardless of the law of the land?" And to this question we answer, "undoubtedly, no." And then they ask (3), "When no charge whatever is given to control the jury in their deliberations on the disputed issue, and when not even a *definition* of the offense of which they convicted the man is given to the jury, either in the indictment or charge of the court, will the appellate court refuse a new trial, merely because the judges think the evidence supports the verdict?" Again, we answer, "no." But we do unhesitatingly say that while the judges of the reviewing court have no power whatever to decide disputes of fact, they nevertheless have the undoubted power, and,

when the case authorizes it, the duty of ascertaining whether a given state of facts is sufficient, taken in its strongest view, to authorize this or that legal result.    It is also within the province of the reviewing court to examine the evidence, to see whether any alleged'error was or was not harmful to the complaining party; for error without possibility of injury will not justify a reversal by a reviewing court, however limited its power over the facts.    And lastly they ask, "In other words, can the appellate court make a verdict—try the case,—or is its duty confined to the 'correction of errors in law and·in equity' in the court below?    Does the appellate court give judgment on the case itself, or does it give judgment on the question whether the lower court *properly* tried the case?"    The constitution limits the jurisdiction of this court to "correction of errors in law," and gives it no jurisdiction over the issues of fact; but these powers are to be exercised in accordance with the established rules of judicial procedure; and one of these rules is that error without injury will not work a reversal.    We do not understand the constitution to mean that we must order a retrial of every case wherein we find that some abstract error has been committed.

The very earnestness with which counsel have presented their points in the application for rehearing, our knowledge of their personal and professional fairness and ability, and our belief in the perfect sincerity with which they insist that our judgment is wrong, have caused us to carefully look into the matter again. Law and common sense both seem to support us in the proposition that if the State's testimony showed unequivocally that the homicide was murder, and the defendant set up no facts showing legal justification, he can not complain of a verdict of voluntary manslaughter, though that verdict was erroneous because contrary to the charge of the court.

But it is insisted that the evidence was not in this condition— that under the defendant's statement the jury might have found him justifiable. If this were so, there ought to be a new trial. The evidence for the State, as well as the statement of the defendant (for he introduced no evidence), showed much moral mitigation for the homicide; the deceased evidently did much to provoke the killing, by his unreasonably abusive and taunting language ad-

dressed to the defendant; but, under the law, none of these things justify a homicide.

Under the defendant's statement, he and another man had had a difficulty in the store of the deceased. The other man went off for a weapon. The defendant went out to his buggy in front of the store, and put shells into his double-barrelled gun and brought it inside the store and sat it down near the door. The deceased told the defendant to get out. The defendant took his gun and went out. The deceased began to curse the defendant, employing very vile and abusive language. The defendant remonstrated with him, begging him to desist from his abuse, and telling him, "I don't want to hurt you, I am a friend to you. I didn't load my gun to hurt you." An outsider intervened, and, putting his hand on the shoulder of the deceased, asked him to quit cursing the defendant. The deceased, who was walking with a crutch, drew it back as if he would hit this outsider, and then turned to the defendant, saying, "You God damn, cowardly son of a bitch, you needn't bother about shooting any one else; here, shoot me!" As to what then occurred, we quote the defendant's statement literally: "And he changed his crutch to the other hand and put his hand in his pocket. I grabbed my gun and shot him. When I shot him I had a carbuncle on my neck and I couldn't get my neck around. I had on my overcoat and everything when I shot him. I just took and throwed my gun down and cocked the other barrel and shot him again. I didn't know whether I hit him the first time or not; I was looking for him to shoot me every minute; I knew he had a pistol at the time; he had it in the store; he carried it to town with him, and he carried it back with him; and when I shot the second time, saw him drop the crutch right inside the door; I saw the crutch fall."

Did this set up a case of justifiable homicide? The deceased used abusive language; and the placing of his hand in his pocket may be construed as a menace. Compare *Malone* v. *State*, 49 *Ga.* 217. But words and menaces alone do not justify. The deceased in fact had no pistol, but the defendant thought that he had one. He therefore relied upon the doctrine of apparent self-defense—a perfectly sound defense when the facts justify it. Words and menaces, while not sufficient per se to justify, may under peculiar circumstances constitute such an apparent state of danger as to arouse reasonable fears. But as was said in the leading case on this subject, as to

reasonable fears generated by words or menaces, justifying a homicide, "There must be more than mere verbal threats. The means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently." *Cumming* v. *State,* 99 *Ga.* 662, 664 (34 S. E. 1017). In the present case the deceased was not threatening to shoot. He didn't draw; he didn't manifest a present intention of shooting. He merely put his hand to his pocket, where the defendant thought he had a pistol, and invited the defendant to shoot him —the act and the word probably constituting an apparent invitation from the deceased to the defendant to engage in a combat with deadly weapons. As the defendant accepted the apparent invitation, the writer thinks that in this view of the evidence the homicide was manslaughter. See *Roberts* v. *State,* 65 *Ga.* 431, 436 (bottom page). As is said in the *Roberts* case, "The mere show of a deadly weapon, without more, would not produce an exigency to justify a homicide," and much less would it produce such an exigency for the deceased merely to put his hand into his pocket and upon a weapon there (for we may treat the case as if the deceased actually had the weapon), not with a threat that he would shoot the defendant, but with an invitation to the defendant, who was presently possessed with a loaded gun, to begin the shooting.

The *Malone, Roberts,* and *Fallon* cases, supra, besides others, seem to justify us in saying that as a matter of law, the defendant did not set up a state of facts which justified him, and, on the contrary, admitted such a state of facts that the jurors were under their oaths bound to convict him of either murder or manslaughter. We all agree that the defendant, throughout the whole transaction, except in his final act of homicide, acted in much better spirit than did the deceased. He was much provoked, but not legally justified.

Nothing herein conflicts with the oft-repeated proposition that if the evidence of the State shows murder, and that of the defendant shows justification, or denies the homicide, and there is no middle ground, a verdict of manslaughter will not be allowed to stand. This case is within the rule announced in *Carver* v. *State,* 105 *Ga.* 461 (30 S. E. 433), a case differing from this one only in the fact that the error there consisted in the courts submitting manslaughter to the jury, while the error here is that the jury acted without the instruction. In that case it was held: "Though a

charge upon the law of voluntary manslaughter was barely warranted, the fact that such a charge was given does not, in the present case, present any reason for granting the accused, who was convicted of this offense, a new trial; for the State's evidence made against him a case of murder, and there was no testimony which would have justified an acquittal. The homicide being manifestly felonious, and the verdict being the most favorable to the accused which could, in any view of the case, have been rendered, he was not injured by an instruction which afforded the jury an opportunity to thus grade the crime." We feel it our duty to deny the rehearing.