No. 65.—HENRY RICKS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] Nothing but *written* permission from the owner, overseer or employer of a slave, or from some other person authorized to give such permission, will justify a person in buying or receiving cotton from such slave.

[2.] A new trial will not be granted for an error which was entirely harmless; at least, it will not be in cases in which there was no motion for a new trial, in the Court below.

[3.] An indictment which follows the words of the part of the Code on which it is founded, is good.

[4.] The Court states correctly to the Jury, what is the whole law of the case: It then tells them, "the Court may be wrong, but you cannot be wrong in taking the law from the Court": *Held,* that this, although an erroneous statement of the law, is to be presumed, in the particular case, to have done no harm; and so, is not a sufficient ground to justify this Court in granting a new trial—the case being one in which no motion for a new trial was made in the lower Court.

Misdemeanor, in Bryan Superior Court. Tried before Judge FLEMING, December Term, 1854.

This was an indictment for buying cotton from a slave, without permission.

It appeared, by the testimony of William L. Walthour, that, having reason to suspect the defendant of purchasing cotton from his father's slaves, he had furnished one of them with a quantity of cotton and sent him to defendant's house, while he went to watch their proceedings: that defendant bought the cotton from the negro, paying him in liquor and tobacco; witness heard them also talk of a former transaction of the same kind, and made an arrangement for a future one.

Witness then procured a warrant, arrested the defendant, and found the cotton in his house. He stated that the proceeding was "a *trap* set to catch the defendant;" and that the negro had no written permission to sell the cotton. Here the testimony closed. Counsel for defendant requested the Court to charge the Jury, that they were the judges of the law, as well as the facts, and were not bound, in their finding, by any instructions the Court might give; that if this transaction was a trap laid to catch defendant, and the negro carried the cotton there, and sold it, by the commands of the witness or the prosecutor, that they must find the defendant not guilty; that the indictment was defective, in not stating who was the owner of the cotton; and that the case was not made out in the proof, because there was no proof of whose property it was.

The Court charged the Jury, "that it was not necessary to allege or prove the ownership of the cotton in any person; that the Jury were the judges of the law, but were bound to declare the law as they knew it to be; that they assumed a great responsibility, if they undertook to decide the law differently from what it was held to be by the Court; but if they took the law from the Court, their skirts were clear ; that the Court might be wrong, but they could not be wrong in taking the law from the Court".

The Court went on to charge, "that if the defendant bought the cotton from the slave, without written permission, he was guilty ; and that it was no justification to him, that the witness

or the prosecutor had sent the negro with the cotton; that while it is a misdemeanor to solicit another to commit a crime; yet, if any one has reason to believe that crime is being committed, it is not only lawful but praiseworthy, to ferret it out and to set traps to catch the offenders".

The Jury found the defendant guilty, and his Counsel excepted to the above stated charges of the Court, and assign error thereupon.

GAULDEN, for plaintiff in error.

Sol. Gen. LONG, and WARD & OWENS, for defendant.

*By the Court.*—BENNING J. delivering the opinion.

By the thirteenth section of the thirteenth division of the Penal Code, it is made a crime for any person to buy or receive, from any slave, "any cotton" as well as various other articles, "without *written* permission from the owner, overseer or employer of such slave, or some other person authorized to give such permission, authorizing such slave to sell and dispose of said money or other article or articles". (*Cobb Dig.* 827.)

(1.) According to these words, nothing but *written* permission can justify the buying or receiving of cotton from a slave.

The charge of the Court, on this point, was not as broad as this law. The charge was, in substance, that what was proved in the case, would not amount to a justification to the defendant for buying the cotton from the slave. The charge might have gone further, and said that there was nothing but a written permission, which would have amounted to such justification. The words of the law would have warranted a charge going that length.

The charge, then, on this point, was according to the words of the law.

[2.] The charge, that if any one has reason to believe that crime is being committed, it is not only lawful but praiseworthy to ferret it out and to set traps to catch the offenders, was a mere abstraction. Supposing it, however, to have been intended to

Ricks *vs.* The State.

be applied to the facts of this case, it was, if wrong, entirely harmless; for, say that it was neither lawful nor praiseworthy in the prosecutor to use the means of detection which he used in this case—say it was a misdemeanor in the prosecutor to use them, yet would this misdemeanor in the prosecutor have justified the defendant in doing what he did—in buying the cotton from the slave without written permission? If it would not, of what consequence to the defence could it be, whether the Court told the Jury that the conduct of the prosecutor was lawful or not lawful, praiseworthy or not praiseworthy. And it would not, as we have seen.

But we do not mean to say that the charge, though harmless, was, in itself, wrong. What law does it violate? I know of none.

There was no motion in the Court below for a new trial, in this case.

[3.] The indictment follows the words of the Statute. (*Cobb's Dig.* 827.) And any indictment which does that is good. (*Id.* 833.) The Court, therefore, was right in telling the Jury that it was not necessary to allege or prove the ownership of the cotton in any person.

It is not true that the Court expressed any opinion, as to what had or had not been proved in the case.

The Court "charged the Jury that they were the judges of the law and the fact, and were not bound by any instructions the Court might give: but that the fact that they were judges of the law and the fact, did not release them from the obligation to find the fact as they believed it to have been proven, and to declare the law as they knew the law to be; that the Jury were judges of the law, but that they assumed a great responsibility when they undertook to decide the law contrary to the instructions of the Court. When you take the law from the Court your skirts are clear; the Court may be wrong, but you cannot be wrong in taking the law from the Court".

The latter part of this charge we think to have been erroneous.

What is the duty of the Jury, with respect to deciding what

is the law by which they are to govern themselves? The six-teenth section of the fourteenth division of the Penal Code is in these words : " On every trial of a crime or offence contained in this Code, or for any crime or offence, the Jury shall be judges of the law and the fact, and shall, in every case, give a general verdict of " guilty" or " not guilty"; and on the ac-quittal of any defendant or prisoner no new trial shall, on any account, be granted by the Court". The meaning of this plain-ly is, that it is the Jury and not the Court—the Jury whose right and whose duty it shall be, to be the judges of both what the law is and what the fact is ; that is to say, whose right and whose duty it shall be to judge—to decide both what the law is and what the fact is; and that after having judged—decided what the law is, and the fact is, they shall give their judgment —their decision in the form of a general verdict of " guilty" or " not guilty". Now if it is the duty of the Jury to judge—to decide—what the law is, they do not perform that duty when they let the Court decide for them what the law is, any more than they would perform it if they should let the Court decide for them what the facts are. And therefore, if the Court should happen to " be wrong," they would " be wrong in taking the law from the Court". Suppose a Court should tell the Jury that homicide, the most causeless, the most deliberate, the most malicious, is not a crime, or that homicide, without any malice —homicide, in the clearest self-defence, is a crime—is murder, and the Jury were to take the statement as law, and find ac-cordingly, would not their conduct be " wrong"? What answer could they make when told—you, gentlemen, were made the judges of what was the law; you, therefore, were not bound to take, for law, anything that was not law, come from whose lips it might. You, therefore, cannot shield yourselves behind the Court; you have done " wrong". They could make no answer to this.

We think the Court erred in this part of the charge. This part might be right under the Common Law ; which leaves it optional with the Jury to decide the law for themselves, or to take it from the Court—to find a general verdict or a special

verdict. " Also, in such case, where the inquest may give their verdict at large, if they will take upon them the knowledge of the law upon the matter, they may give their verdict generally, as is put in their charge". This is the text of *Littleton*, and *Coke* commenting on it, says, " Although the Jurie, if they will take upon them (as Littleton here saith) the knowledge of the law, may give a general verdict; yet, it is dangerous for them so to doe, for if they do mistake the law they run into danger of an attaint; therefore, to find the special matter is the safest way, where the case is doubtfull". (*Coke Litt.* 228 *a.*)

Our Statute is different. It says, the Jury *shall* be the judges of the law and the fact, and *shall, in every* case, give a *general* verdict. It cannot, under this Statute, therefore, but be their *duty*, in every case, to decide, for themselves, what the law is. And this they do, indeed, of necessity, in every general verdict which they render. And they cannot render a special verdict. But if such a charge of the Court as this is right, they might, in substance, render a special verdict. The charge is, you cannot be wrong in taking the law from the Court. If that be so, the Court might say, you cannot be wrong if you simply find the facts, and leave it to the Court to annex the law to them; for what difference can it make whether the act of annexing the same thing is done by you or done by the Court —done by you in a general verdict, or done by the Court on your special verdict.

[4.] Still, although we regard what the Court said on this point as erroneous, we do not think it erroneous in a way to have done any harm in this case. What the Court had told the Jury to be the law, we think was the law, beyond a doubt. That being so, if the Jury followed it, the effect was only that they came to the same conclusion to which they would have had to come, had they followed the direct law itself. This we are at least bound to presume, are we not? Still, it must be admitted, that if taking the law into their own hands, they had come to a different conclusion, and had acquitted the accused, their acquittal would have been good; that is to say, if they had applied to the case, as law, something which *we* think not to have

been law, that something, by their verdict, would, nevertheless, be law—be the law of this particular case.

Speaking for myself, therefore, I doubt, exceedingly, whether this is an error of which it may be said that it could not possibly, *under the law*, have done the accused any harm. Still, as this is a case of no great consequence, and as this point was not much argued, I have felt at liberty to yield my doubt to the opinion of the other two members of the Court.

But it is proper to say, that as far as I am concerned, I do not consider this a closed question.*

There is nothing else in the case to be noticed. The judgment ought to be affirmed.

---

*Note*—The Reporter is requested, by Judge Starnes, to state, that while he concurs in the judgment of affirmance, on this point, in this case, he does not assent to the reasoning by which that judgment is sustained—it being his opinion that the remark of the Judge below, in his charge, was substantially correct. That while the Jury are the judges, both of law and fact, in criminal cases, yet, when the Court gives them the Law correctly in charge, they cannot err in adopting his exposition.—*Reporter.*