## 3505. REGISTER *et al. v.* THE STATE.

1. No question for determination by this court is presented by a ground in a motion for a new trial, alleging error in admitting certain testimony over the objection of the defendant, where it affirmatively appears from the ground that no reason was presented to the court in support of the objection, and that no ruling was made thereon. *Soell* v. *State,* 4 *Ga. App.* 337 (61 S. E. 514); *Phillips* v. *State,* 102 *Ga.* 594 (27 S. E. 699).

2. The fact that a person accused of crime voluntarily surrendered to the sheriff and made no attempt to escape can not be proved by him in his own behalf. *Lingerfelt* v. *State,* 125 *Ga.* 4 (2), (53 S. E. 803, 5 Ann. Cas. 310), and authorities there cited.

3. Articles of wearing apparel, claimed by the accused to have been worn by him at the time of the difficulty, and evidencing by their physical condition that an assault had been made upon the accused by the deceased, are not admissible in evidence in behalf of the accused when their identification rests solely upon his statement to the jury. Proof of genuineness and identification of documents must be made by relevant testimony, as a condition precedent to their introduction in evidence. *Nero* v. *State,* 126 *Ga.* 554 (55 S. E. 404).

4. On the trial of an indictment for murder the judge gave the jury instructions relating to the law on murder, voluntary manslaughter, and justifiable homicide in self-defense. He did not instruct them on the law of involuntary manslaughter. The jury, after deliberation, returned a verdict finding the accused guilty of "involuntary manslaughter," and this verdict was read and published in open court as their verdict. There was no intimation by any member of the jury that the instructions of the judge on 'the law of the case had been misunderstood, no further instructions were asked, no member of the jury dissented from the verdict, and nothing occurred tending in any manner to show that the entire jury did not deliberately intend the verdict published in court as their unanimous finding. The judge refused to receive the verdict of involuntary manslaughter, telling the jury that the court could not receive the verdict which they had attempted to return, that the court had not charged them upon the law of involuntary manslaughter, and to return to their room for further deliberation. *Held:* (1) The verdict of involuntary manslaughter was in legal effect a verdict finding the accused guilty of the highest grade of involuntary manslaughter, and operated as an acquittal of the higher grades of homicide, that is, murder and voluntary manslaughter, as charged in the indictment. (2) The verdict of involuntary manslaughter was a finality, unless objected to in some form by the accused, and the judge could not legally refuse to receive the verdict, or to restrict in any manner the exclusive right of the jury to find and return the verdict, and the action of the judge in refusing to receive the verdict and in requiring the jury to return to their room for further deliberation was unauthorized by law.

DECIDED NOVEMBER 20, 1911.

Conviction of manslaughter; from Colquitt superior court—Judge Thomas. May 20, 1911.

*W. A. Covington, James Humphreys, Edwin L. Bryan, Claude Payton,* for plaintiffs in error.

*J. A. Wilkes, solicitor-general, Shipp & Kline,* contra.

HILL, C. J.   The rulings stated in the first three headnotes do not require elaboration.   The question of law dealt with in the last headnote, being novel, important, and interesting, justifies, if it does not demand, elaboration.   The accused were on trial for murder.   The jury, after having been out for some time considering their verdict, came into court and announced that they had agreed upon a verdict.   This verdict was read by the solicitor-general, and was as follows:   "We, the jury, find the defendants, B. L. Register and C. C. Register, guilty of involuntary manslaughter.   E. L. Bacon, foreman.   This April 13th, 1911."   The judge refused to receive this verdict, or allow it to be filed, and directed the jury to return to their room for further deliberation, stating to them that the court could not receive the verdict which they had attempted to return, and that the court had not charged them upon the law of involuntary manslaughter.   Counsel for the defendant, immediately after the jury had returned to their room, asked that the judge charge the jury as to the grades of involuntary manslaughter, and reduced the request to writing; and the court refused to give the instructions requested, or to charge the jury upon the law of involuntary manslaughter.   The judge had the jury brought back into the court-room, and the following colloquy took place between the court and one of the jurors:   The court:   "I just called you out, gentlemen, to see what the trouble was, if any,—if there was any way in which the court could help you as a matter of law.   Of course the facts, the court could not intimate any opinion as to these."   Juror:   "We want to know as to the degrees in this manslaughter."   The court:   "I don't quite understand the inquiry, gentlemen."   Juror:   "We want to know whether or not there was more than one kind."   The court:   "I gave in charge instructions as to voluntary manslaughter.   What is your inquiry now, Mr. Foreman?"   Juror:   "We wanted to know if there was more than one kind, that is, involuntary manslaughter."   The court:   "The court gave you instructions with reference to voluntary manslaughter.   The court did not give you any instructions with reference to involuntary manslaughter."   Juror:   "That is all."   After this the jury retired, and brought in a verdict of guilty of voluntary manslaughter.   The

motion for a new trial alleges that this was error, (1) because the accused had the right to have the first verdict filed, it being the verdict of the jury in the case, and it being the intention of the jury to give the defendants the benefit of the lower grade of punishment provided for the crime of involuntary manslaughter; and that the legal effect of such verdict was that the defendants stood guilty of the involuntary killing of a person while engaged in the commission of an unlawful act, the heaviest punishment for which is three years in the penitentiary; and (2) because the defendants were entitled to have the jury charged as to the two grades of involuntary manslaughter, the jury having stated that the intendment of their verdict was to reduce the grade of punishment, and, by refusing either to allow the verdict or to charge the jury upon the law of involuntary manslaughter, the presiding judge deprived the jury of their rights as jurors, and forced them to return the verdict of voluntary manslaughter, which was thus not a free expression of the sworn opinion of the jury, and, therefore, not a legal verdict.

The form in which this question is raised is probably not technically correct. It should have been made by direct exception at the time of the action of the court in refusing to receive the verdict of involuntary manslaughter and directing the jury to return to their room for further consideration, or by an exception contained in the final bill of exceptions. But regardless of the manner in which the question is raised, this court thinks that the question as presented in the motion for a new trial is of such character as to demand a decision, as, in our opinion, the question lies at the very foundation of the right of jury trial.

It is interesting to note that the question here made has never before, except on one recent occasion, occurred in the history of criminal trials in this State. The previous occasion referred to was in the case of *Darsey* v. *State*, 136 *Ga.* 501 (71 S. E. 661), in which the judgment of the trial court was affirmed by operation of law, the Justices of the Supreme Court being evenly divided in opinion. In that case the question, although identical as to principle, was presented somewhat differently to the Supreme Court from the manner in which the question is presented to this court in the present case. The *Darsey* case was an indictment for murder. The trial judge instructed the jury on the law of murder and the law of voluntary manslaughter and the law of justifiable homicide, and as to the

form of their verdict in each event. The court did not instruct the jury as to the law of involuntary manslaughter. The jury nevertheless returned a verdict in open court, which was received by the clerk and published, finding the defendant guilty of the offense of involuntary manslaughter. The judge refused to receive this verdict and instructed the jury that he had not charged them on the law of involuntary manslaughter, and to retire and find a verdict, and further instructed them to strike from the indictment the verdict of involuntary manslaughter, stating that it was not proper and in legal form. The jury returned to their room, and, failing thereafter to agree upon a verdict, the court, over the objection of counsel for the accused, declared a mistrial. Counsel for the accused insisted that the jury had already found the defendant guilty of involuntary manslaughter; that the verdict had been published; that it was a legal verdict finding the defendant guilty of the highest grade of involuntary manslaughter, and that the court had no power in such case to declare a mistrial. It may be also stated that counsel for the accused, when the court refused to receive the verdict of involuntary manslaughter and directed the jury to return to their room, objected to this action of the court and insisted on a reception of the verdict. When the case was again called for trial the accused filed a plea of former conviction and former jeopardy, and, on an agreed statement of facts, this issue was presented to the presiding judge, who decided the issue in favor of the State, and the defendant excepted. On the question as thus presented, the Supreme Court, as before stated, divided equally, Justices Lumpkin, Beck, and Atkinson being of the opinion that the decision of the trial judge was error, and that the plea should have been sustained, and Chief Justice Fish, Presiding Justice Evans, and Justice Holden being of the opinion that the court did not commit an error in overruling the plea of former jeopardy, as the allegations therein were insufficient as a bar to further prosecution of the case.

It was insisted, in the argument of learned counsel for the defendant in error, and also in the brief filed in this court, that the judgment in the *Darsey* case is binding on this court on the question now raised. We do not concur in this view. By the constitutional amendment creating this court, "the *decisions* of the Supreme Court shall bind the Court of Appeals as precedents." But in the *Darsey* case the court did not make any decision. The Justices of the

court divided evenly as to what decision should be made, and by operation of law the *judgment* of the lower court was affirmed. This by no means constitutes any decision of the Supreme Court. It is simply an affirmance of the judgment below as to that particular case, and does not amount to a decision of the Supreme Court, and the opinion of one half of the Justices of the Supreme Court is entitled under the law to no more weight with this court than the opinion of the other half, and the fact that the judgment of the trial court strikes the balance in favor of the affirmative has no legal effect whatever as precedent or authority. Of course it is desirable that there should be no conflict, real or apparent, in the decisions of this court and those of the Supreme Court, and the decision by this court on this question will present no conflict, but the question is before this court, and the plaintiff in error is entitled to a decision of the question, and this decision this court, in the discharge of its duty under the law, is obliged to render. A majority of the court is clearly of the opinion that the ruling of the trial court on this point was erroneous, and that the motion for a new trial should have been granted because of this error.

The fundamental law of this State declares that "the jury in all criminal cases shall be the judges of the law and the facts." Constitution, art. 1, sec. 2, par. 1 (Civil Code (1910), § 6382). And this has always been the law in this State. In the earlier decisions the Supreme Court held that this provision of law meant that the jury were judges of the law even to the extent that they could determine the law to be different from that given in the judge's charge. In the case of *Ricks* v. *State*, 16 *Ga.* 600, after quoting from the Penal Code as follows: "On every trial of a crime or offense contained in this Code, or for any crime or offense, the jury shall be judges of the law and the fact, and shall in every case give a verdict of 'guilty' or 'not guilty'; and on the acquittal of any defendant or prisoner no new trial shall, on any account, be granted by the court," the court says: "The meaning of this plainly is, that it is the jury and not the court—the jury whose right and whose duty it shall be, to be the judges of both what the law is and what the fact is; that is to say, whose right and whose duty it shall be to judge—to decide both what the law is and what the fact is; and that after having judged, decided what the law is, and the fact is, they shall give their judgment—their decision in the form of

a general verdict of ' guilty,' or ' not guilty.'" In these earlier decisions it is held that if the jury can not conscientiously adopt the law as it is given in the charge of the court, it is not only their *right,* but their *duty,* to render a verdict according to the opinion which they entertain of the law. This was the uniform holding of the Supreme Court in the ante-bellum period. The decisions are collated in 4 Michie's Encyclopedic Digest of Georgia Reports, 37. The interpretation now made by the Supreme Court of this provision of the law is that while jurors are judges of the law as well as of the facts in criminal cases, they must accept the law as laid down and expounded to them by the presiding judge. Beginning with the ruling in the case of *Brown* v. *State,* 40 *Ga.* 689, this has been the uniform interpretation of this law by the Supreme Court to the present day, and we may consider the law as now settled that in the trial of criminal cases it is the *duty* of the jury to *take the law from the court,* as it is their duty to take the evidence from the witnesses.

But suppose the jury disregards its duty in a criminal case and returns a verdict outside of the law as expounded by the judge, and without any evidence to support it as given by the witnesses, what would be the effect of such a verdict? The accused has a statutory remedy. He can file a motion for a new trial and have the verdict set aside, because contrary to law, or without any evidence to support it. But what can the State do? It certainly can not have such a verdict set aside on motion for a new trial, for in no case can the State file such a motion, and no new trial shall on any account be granted by the court at the instance of the State. What the State can not do directly, the trial judge can not do for the State indirectly. If a verdict of acquittal is a complete bar to any further prosecution, the court has no authority to continue any further prosecution of the case after the verdict of acquittal by the jury. It is wholly immaterial whether the verdict is supported by the evidence or by the law. If a verdict found by the jury is included within the crime as charged by the indictment, and is in form correct and explicit, the court is powerless to change it. The court is powerless to direct the jury to change it after it has been published. It stands forever as a protection to the accused and as a complete bar to any further prosecution for the same transaction. In the case of *Kitchens* v. *State,* 41 *Ga.* 217, Judge McCay

uses the following language: "If the jury fails to heed the charge of the judge and finds the prisoner guilty, the court is authorized to grant a new trial. If the jury fails in favor of the prisoner and find him not guilty, although there is no remedy for the error, it is none the less a wrong." The learned Judge holds that this would be a wrong in the jury because it would be their duty to receive the law from the judge, but if their failure to do so operates in favor of the prisoner, the conclusion is, notwithstanding the wrong, that there is no remedy for its correction. It can not be doubted that an acquittal of the accused would operate as a complete bar to any further prosecution, however much the acquittal might be against the evidence and the law. Where the trial is for murder and the verdict is for an inferior grade of homicide, this is in legal effect an acquittal of all the higher grades of the crime. *Jordan* v. *State*, 22 *Ga.* 559.

In this case the verdict of involuntary manslaughter which was found by the jury in the first instance was an acquittal of the defendants of all the higher grades of the homicide, and must be treated as equivalent to a finding that the defendants were guilty of involuntary manslaughter in the commission of an unlawful act. *Thomas* v. *State*, 121 *Ga.* 331 (49 S. E. 273). "When only a minor offense is found, the finding, unless set aside at the prisoner's instance, is a full and complete acquittal of the major offense charged." *Miller* v. *State*, 58 *Ga.* 203. Of course, where a verdict is not in proper form, or where it is uncertain what the jury intended to find by their verdict, or where that verdict is for an offense not covered by the indictment, the judge may send the jury back for further consideration of the case. *Cook* v. *State*, 26 *Ga.* 593; *Mangham* v. *State*, 87 *Ga.* 552 (13 S. E. 558). But if the verdict is explicit and is included in the charge set out in the indictment, and if it appears to be the deliberate and intentional finding of the jury, though it may be in the very teeth of the charge and wholly without any evidence to support it, the court is obliged to receive it; and to refuse to do so is, in the opinion of a majority of the court, under the law of this State, an unwarranted invasion by the judge of the exclusive province of the jury. Mr. Bishop, in his work on Criminal Procedure (2 New Cr. Proc. § 642), uses the following language: "A verdict contrary to instructions, for a less degree of the offense than the evidence proves, must be received

and carried out. Certainly there is no higher duty on the jury to observe the instructions of the court than there is upon the jury to find a verdict according to the truth in the evidence." Proffatt, in his work on Jury Trials (§ 467), in discussing the conclusiveness· of a verdict, lays down this principle as without any exception: "In one instance a verdict is final; that is, in case of a verdict of acquittal. Whatever errors may have been made by the jury in the application of the law, or however perversely they may have acted,· and in defiance of the plain and positive instructions of the court, their verdict of acquittal in a criminal case is .final. The court can not set it aside for any error of law, or any disregard of the evidence. While in case of a conviction the prisoner has a right to have the action of the jury reviewed, in case of acquittal no such right is given to the people. It is for this reason, no doubt, that the doctrine has been maintained, that in criminal cases the jury are the judges of the law and fact." And Mr. Bishop, further discussing the principle, uses the following language: "If, obeying their own conscience and disobeying the judge, they [the jury] return a verdict of acquittal, he can neither punish them nor set the verdict aside, though he can set aside a conviction. This power of granting a new trial, therefore, furnishes no reason or test of the rights of juries. They can not convict a defendant contrary to the direction of the court, but they may acquit him in like disobedience whenever their own judgments demand. The judge may in his charge convey to them his ideas of their duties, but the law restricts him from interposing with his power." The great Mansfield declared: "It is the duty of the judge, in all cases upon general issues, to tell the jury how to do right, though they have it in their power to do wrong, which is a matter between God and their own consciences." 3 T. R. 428, note 9.

In a criminal case, therefore, we conclude that while it is the duty of the jury to take the law as given them in charge by the court, and the evidence as presented to them by the witnesses, yet if they take the law and the evidence into their own hands and find a verdict explicit as to form and intention, and included within the crime charged in the indictment, the finding is within their power as it is written in the law, and the verdict is an absolute protection from any subsequent prosecution for the same transaction, whether or not that verdict is received formally and filed by the court; and the

court has no power to nullify or set aside the verdict of the jury by refusing to receive it and have it filed in such case. In other words, after a verdict of the character above described in a criminal case has been found by the jury and published in court as their verdict, the judge has no right, under the statutes of this State, to take issue with the jury as to the legality of that verdict, or to get up any controversy with the jury as to whether the verdict is contrary to law or without any evidence to support it, or to coerce them to any further consideration of their verdict. Now, in this case, the indictment being for murder and the jury having found a verdict of involuntary manslaughter, which is embraced in the charge of murder, and that verdict having been returned into court and published by the jury as their verdict, and there being no objection by any member of the jury that the verdict was not the verdict of the twelve jurors, the court had no right to send the jury back for any further deliberation. It is wholly immaterial whether this verdict was in obedience to the instructions of the court, or was in accordance with the evidence in the case. It was the finding of the exclusive arbiters on the question of the defendants' guilt or innocence, and the reception of this verdict and its filing of record was a mere matter of formal procedure, and did not in any manner affect the substantial rights of the accused as fixed by the verdict; and the most substantial right was that they were acquitted by this verdict of all the superior or higher grades of the crime charged against them; and it seems to the majority of this court that it would be to overthrow the very foundation of the right of trial by jury and to place the entire matter into the hands of the trial judge, both under the law and the evidence, to permit the judge in such case to send the jury back for further consideration of their verdict.

In Fagg v. State, 50 Ark. 506 (8 S. W. 829), the accused was tried on an indictment for murder, and the jury found the following verdict: "We, the jury, find the defendant guilty of manslaughter, but can not agree upon his punishment." In Arkansas the statute, as in this State, makes two degrees of manslaughter, voluntary manslaughter and involuntary manslaughter. The judge, in sentencing the defendant, treated this verdict as one of voluntary manslaughter. The appellant contended that the killing was either murder in the first degree, or justifiable homicide, and therefore that the jury could not legally return a verdict of manslaughter.

In the course of the opinion the Chief Justice says: "Where the evidence and the instructions of the court demand a verdict of murder, but the jury finds manslaughter, there is no alternative but to sentence the prisoner accordingly. The court can not withhold from the jury the power to return a verdict according to their will for any grade of the offense charged against the defendant. The court can only instruct juries as to their duty, giving them in charge the law applicable to the facts, and no other. If there is no evidence whatever tending to establish a lower grade of homicide than murder in one instance, or voluntary manslaughter in another, the court should decline to give to the jury directions as to any lower grade of homicide, and it is the jury's duty to take the court's exposition of the law as that applicable to the case. But the court can not direct a verdict for the higher offense, nor restrain the jury from returning it for the lower grade." One of the headnotes applicable to this point is as follows: "On the trial of an indictment for murder, although both the instructions of the court and the evidence call for a conviction of the highest grade of the offense charged, there is no power to restrain the jury from returning a verdict of manslaughter; and in such case the accused must be sentenced according to the finding of the jury."

To refuse to receive the verdict in a criminal case, on the ground that the verdict is for a grade of the offense charged in the indictment but not covered by the instructions of the court, and without evidence to support it, is to restrict the exclusive right of the jury in their finding of a verdict to that view of the law and the evidence entertained by the trial judge, and in its last analysis is destructive of the right of jury trial. And certainly, in a State where the statute deprives the judge of the right to intimate any opinion on the facts, and makes such intimation of opinion a mandatory ground for a new trial, the refusal of the trial judge to receive a verdict is, although indirect, a very strong method of informing the jury that the trial judge entertains a different opinion from that entertained by the jury on the evidence as applicable to the law. In the case of Grant *v.* State, 33 Fla. 291 (14 South. 757, 23 L. R. A. 723), the indictment was for murder, and the jury brought in a verdict of manslaughter in the first degree. The judge refused to receive this verdict and stated to the jury in effect that it was defective, as there were no degrees in manslaughter, and

that they must retire and present a verdict in proper form. In discussing the right of the judge in that case to give such direction, the Supreme Court said: "The direction was to retire and present a verdict in a proper form. There is nothing here to indicate the character of the verdict to be returned, except that one for manslaughter in the first degree was not in proper form. If there was any error on the part of the judge, it was in refusing to receive the first verdict as presented, and in not proceeding to affirm it in the proper way. It is of course true that when a complete formal verdict is returned by the jury, the court has no discretion in the matter, but must proceed to affirm it." In the case now under consideration no objection was made as to the form of the verdict, but the objection, in effect, was that the verdict was unauthorized by the evidence and the law applicable thereto, as covered by the instructions of the court, and the jury was directed not to change the form of the verdict, but to retire and consider the question of evidence, according to the instructions of the court. In other words, the court, in effect, told the jury in the present case that their verdict for involuntary manslaughter was without any evidence to support it, and was contrary to his instructions as to the law applicable to the issues made by the evidence.

In the case of *Spence* v. *State*, 7 *Ga. App.* 825 (68 S. E. 443), this court held that on the trial of an indictment for murder the jury may convict of any lesser grade of homicide, and a verdict of voluntary manslaughter in accordance with the evidence would be a legal verdict, although the court did not instruct the jury on the law of voluntary manslaughter. A majority of the court in the case sub judice go even further than the decision announced in the *Spence* case, and entertain the view that a verdict for a lower grade of homicide on the trial of an indictment for murder is binding upon both the trial judge and the State, and can not be set aside or avoided except at the instance of the accused. As before stated, a verdict of guilty of a lesser grade of homicide than that charged in the indictment is an acquittal of the higher grade. To allow the judge to refuse to receive it is to allow him to refuse to permit the jury to acquit of the higher grade of homicide because the verdict is not sustained by the evidence as the judge views it. The fact that the State can not except to a wrong verdict and the defendant can do so is immaterial and furnishes no answer to the

argument. ·This is true of every error, either of law or fact, in criminal cases, for no error against the State can be corrected, while any error against the accused can be corrected. This arises from the general rule that no one can be twice put in jeopardy, under the constitution of this State, unless the verdict is set aside on his own motion, or by the direction of a mistrial in a proper case. Civil Code (1910), § 6364. What is here held is, we think, not in conflict with the well-settled rule that the trial judge is not required to charge any part of the law which is not in his opinion applicable to the evidence; and the refusal of the court in this case to charge the law of involuntary manslaughter was not erroneous, under the .evidence, but the refusal to receive a verdict which was clear and explicit in its terms, of a lower grade of homicide embraced in the charge made by the indictment, and sending the jury back with instructions to resume their consideration of the case, was, in the opinion of a majority of this court, error, and in its last analysis would tend to destroy the right of trial by jury, and to place in the hands of the trial judge the exclusive determination of the ultimate guilt or innocence of the accused.

We have not referred to the colloquy between the judge and the jury subsequently to the return of the verdict of involuntary manslaughter, and the absolute refusal of the judge to receive the verdict, and his direction to the jury to retire and resume their deliberations. If we are right in the view presented, that the verdict of involuntary manslaughter was, under the circumstances stated, a final verdict, and it was· the duty of the court to receive it, the subsequent action of the court was wholly immaterial. We think, however, that a fair deduction from the language used by the jury in reply to the judge's inquiry was an expression of a desire to adhere to the verdict of involuntary manslaughter, if there was such a grade of homicide, and they were prevented from doing so because the judge declined to answer their inquiry, except by telling them that the court had "given instructions only as to voluntary manslaughter." This was equivalent to telling the jury that so far as the evidence in this case disclosed, there was no such offense as involuntary manslaughter. It will be noted that the judge's refusal to *receive* the verdict of involuntary manslaughter was not on the ground that the verdict was imperfect or incomplete in that it did not clearly express the intention of the jury on the grades of

involuntary manslaughter, whether the jury intended to find the accused guilty of involuntary manslaughter in the commission of an unlawful act, or involuntary manslaughter in the commission of a lawful act without due caution and circumspection; but the refusal was placed squarely on the ground that the jury had found a verdict contrary to his instructions. · We think the judge was authorized to assist the jury in making the verdict explicit as to the degree of involuntary manslaughter, but he could not intimate what sort of verdict the jury should find. *Turbaville* v. *State*, 58 *Ga.* 546 (3). His refusal to explain the grades of involuntary manslaughter after the jury had found a verdict for this offense, and when they requested him to do so, and he insisted in effect that they could only consider the offense of voluntary manslaughter, approached near, if it did not actually reach, an intimation of opinion on the subject. The jury ought to have followed the instructions of the judge as to the law. It was wrong for them to disregard these instructions, just as it would be wrong to find a verdict not supported by the evidence; but if the wrong is perpetrated by the jury against the law, or against the weight of the facts, in the language of Judge McCay, "the wrong is without remedy," except at the instance of the accused; and in the words of Mansfield, it "is a matter between God and their own consciences."

Suppose the jury in this case, after the refusal of the judge to receive their verdict, had persisted, and again returned the same verdict, could the judge have legally declared a mistrial? Would not the accused have been protected from any subsequent trial by the plea of autrefois convict, if the judge had declared a mistrial? Suppose the judge had said to the jury, when they brought in their verdict of involuntary manslaughter: "Gentlemen of the jury, you have found a wrong verdict, one wholly without evidence to support it and in the teeth of my instructions on the law, and I therefore set it aside, and direct that you retire to your room and resume your deliberations," would this not have been a clear invasion of the exclusive province of the jury? Is there any substantial difference in this supposed action of the judge, and what was done in this case?                    *Judgment reversed.*

POWELL, J., dissenting from the ruling in the 4th paragraph of the syllabus and the corresponding matter in the opinion.

There may have been a day when the proposition laid down in the

majority opinion would not only have been sound from a logical standpoint, but would have been consistent with the general scheme of jurisprudence then in force. In my opinion that day is past, and, if not wholly past, is passing; and I would do nothing to protract its stay.

A court is defined as "a place where justice is judicially administered." The chief task of all our ingenuity is and should be to make our courts efficient to this end of administering justice. Harmony is a sine qua non of efficiency. Courts give better justice now, and administer it more judicially, than they did in earlier times, because more certain and harmonious methods of trial than were then known have been devised. In no phase of the general question has more improvement in this respect been obtained than has come about through the progress which has been made in defining the respective functions of judge and jury as they are called upon to co-operate in the trial of a case.

Irrespective of all older views and judicial announcements on the subject, the modern view and the present rule are conceded to be that the judge is charged with the function of deciding all questions of law in the case, and the jury with the function of deciding all questions of fact; and beyond this, wherever a general verdict is required, as it is in a criminal case, the jury is charged with the further duty of applying the law as decided by the court to the facts as found by the jury. Further progress has been made in this State by the working out of the proposition that the determination of what issues are involved in a case is a question of law, for the court to decide. For instance, though the question as to whether the defendant is guilty of manslaughter may be a possible issue under an indictment for murder, it is error for the court to submit that issue to the jury, where there is no evidence of that character of homicide which constitutes manslaughter; and it is proper in such a case for the court to tell the jury that they should not consider that subject. This proposition has been established by repeated decisions, the majority opinion concedes it, and I need not elaborate it.

Not only is it the duty of the judge to decide the law, but it is his duty to tell the jury how he has decided it, and it is his duty to see that his decision is obeyed and respected, so far as may be in his power. For instance, suppose a writing were offered in evidence

and the court rejected it, and later, after submission of the case to the jury, they should file in and say to the court: "We are judges of the facts; we demand to see that writing, which we deem is relevant to the facts as we see them." Would it be any infringement upon the sacred prerogative of the jury for the judge to tell them, in language howsoever emphatic, that they could not see the paper, and should not consider it in making their verdict?. On the contrary, it would be his duty to do so.

There are a number of decisions of our Supreme Court (and they are referred to with approval in the majority opinion, though as to them my colleagues find a distinction which my mind does not make) to the effect that if the jury offers a verdict for some offense not included in the indictment, the court should decline to receive it. By what right does the court decline to receive such a verdict? It is for no other reason than that such a verdict is not responsive to any issue in the case; and it is the right and duty of the court to see that the verdict is responsive to the issue, or to one of the issues submitted. If the jury (though in a certain sense judges of the law and of the facts) differ with the judge and believe that they have the right to return a verdict for some misdemeanor, say assault and battery, upon an indictment charging a felony, say arson, it is the jury, and not the judge, that must yield. If the judge should receive such a verdict, it would operate to acquit the defendant of the arson, and it would in all respects be equivalent to a verdict of not guilty of that offense; and yet, because the jury thus offer to express themselves in a formulated finding, as if it were a true verdict, should the court receive it? No. And this is an answer in which both reason and precedent heartily concur. And from the correctness of this answer my colleagues offer no dissent.

Now, take a step further, keeping in mind as we go that the determination of what the issues in a case are depends upon a consideration of both the pleadings and the evidence. An indictment charges murder. There is evidence of a homicide, but nothing whatever to show (what it is necessary to show, in order to convict of involuntary manslaughter) that the killing was negligent but unintentional; indeed, the defendant concedes an intent to kill, but pleads justification. The judge, charged with the duty of framing the issues on which the jury must pass, decides, and correctly decides, that there is no issue as to involuntary manslaughter in the

case, and, as is his duty and privilege, he so informs the jury. Nevertheless, the jury, disagreeing with him (as they did in the supposed case of arson discussed just above), offer to return a verdict of involuntary manslaughter. Shall the judge receive it, or shall he direct the jury to return to their room and bring a verdict responsive to the issues submitted to them? It is true that the verdict of involuntary manslaughter, if received, would operate to acquit the accused of the murder and of the voluntary manslaughter, if any, and indeed of all other offenses, if any, so far as the transaction charged in the indictment is concerned; just as a verdict of assault and battery, if received, on an indictment charging arson, would acquit the accused of that offense; but the question is not as to what would be the effect of the verdict if the court should receive it, but as to whether the court should receive it notwithstanding its lack of responsiveness to any issue in the case, accordingly as those issues have been determined by the judge in pursuance of his unchallenged prerogative of framing the issues. My associates draw a distinction between the two cases, and say that though the judge should not receive the unresponsive verdict in the arson case, he can not legally refuse to receive the unresponsive verdict in the murder case; while to my mind there is no rational distinction to be made. And it seems to me not only logical, but eminently proper, and consistent with all the better notions as to how justice should be judicially administered, efficiently administered, that in such a case the judge should stand his ground and compel the jury to tender a verdict responsive to the issue as he in the due exercise of his prerogative has framed it, or else make a mistrial.

I fully agree to the proposition that the judge must not transgress upon the prerogative of the jury. I, with equal alacrity, agree that trial by jury is a well-established right, high and valuable in its nature. But my point is that trial by judge (meaning thereby that the judge shall perform those functions in the trial of the case which are his to perform, according to the recognized division of duties) is to my mind a right no less firmly established, a right no less important in its nature, than trial by jury. Trial by court, that is by both judge and jury, with each legitimately performing only the particular function given by law, is the kind of a trial that most commends itself to right thinking and to the highest sense of jus-

tice, and that best accords with the spirit of our law and with the principles of modern jurisprudence.

It is no less a wrong for the jury to invade the province of the judge than it is for the judge to invade the province of the jury. If a judge, forgetting his duty, should undertake to invade the province of the jury and to express his opinion on the facts, the jury should disregard it and should refuse to follow his opinion, unless it accords with their own. On the other hand, if the jury undertakes to invade the province of the judge, and to inject into a case an issue which the judge has decided is not in it, the judge should likewise repel the invasion of his province, and, in the discharge of his function as the head of the court, directing the progress of the trial, should compel the jury to keep its place, and either to render a verdict on some issue submitted or else make a mistrial.

It is said that if this proposition were recognized to its logical end, a judge might direct a verdict in a criminal case, where the facts were undisputed. Perhaps this may be a logical extension of the doctrine (though I do not concede that it is) ; but even if it were, still, it is to be remembered that we carry few, if any, of our legal doctrines to their full logical end in actual practice. This is true with courts just as it is with men in other activities. From the standpoint of strict logic, we might say that no sensible man would ever eat food that he knows is likely to disagree with him; and yet, in actual practice, sensible men do that very thing every day. But, be that as it may, every criminal case contains the issue of guilty or not guilty of the offense charged, and the jury must believe the evidence, howsoever strong and uncontradicted, before they are compelled to render a verdict of guilty. The jury may reject evidence, but they can not supply it where it does not exist. And it must be kept in mind that the verdict which the judge refused to receive in the present case is one which could not be rendered upon a rejection of testimony; it depended upon the jury's supplying certain facts of which there was no evidence.

Let us elaborate this last proposition slightly. The indictment charged murder—a homicide committed by shooting with a pistol. No matter how conclusive of that offense the testimony as delivered might have been, the jury might have disbelieved it, and could have rendered a verdict of not guilty without going beyond their legiti-

mate function and without transgressing upon the function of the judge. But the verdict offered was for involuntary manslaughter. Now this is an offense which can not exist in the absence of a certain affirmative characterizing element, namely, an intention to do some unlawful act other than to kill; and, as was pointed out in *Maughon's* case, 7 *Ga. App.* 660, 665 (67 S. E. 842), this unlawful act cannot be shooting at another; for, though a person shoot at another not intending to kill, still if death ensues, it is nevertheless murder, under the express provision of § 67 of the Penal Code of 1910. So the jury in this case could not, by rejecting the testimony, or by rejecting a part of it and giving weight to the rest of it, find anything to supply this affirmative element essential to the existence of involuntary manslaughter. The jury had no power to go outside of the evidence to find this affirmative element; hence, by no possibility was it included within the range of any issue before them for decision.

In this connection it is well enough to draw attention to a difference between the modern and the earlier functions of juries. The day was when the jury had the right to act on the private knowledge of its members. From our studies in the history of the English law we learn that in the earliest times juries acted solely on what they knew of the case or of the parties; later they might hear witnesses, but could still legally use their personal knowledge; but now our Civil Code (1910), § 5932, provides, "A juror should not act on his private knowledge respecting the facts."

In the days when jurors could legally act on their private knowledge of the facts, it would have been improper for a judge to refuse to receive from the jury a verdict of any offense which by legal possibility could be included within the charge stated in the indictment. When that was the rule, every grade and degree of murder and manslaughter, as well as a number of minor offenses, was necessarily in issue when the accused pleaded not guilty to an indictment charging murder; for even though no issue of fact as to some of these offenses should arise under the testimony, the court could not say that such an issue had not arisen by reason of some matter resting within the private knowledge of the jurors. This is no doubt the rationale underlying many of the old precedents wherein the right of a judge to refuse a verdict not responsive to the issues made by the evidence is denied. Certainly this is the avowed

reason for the abrogation of the ancient practice under which judges punished jurors who brought in a verdict which, according to the testimony as submitted, was necessarily false. So long as jurors might act upon private knowledge, the judge could not frame the issues except in so far as they were dependent upon the scope of the pleading. Now that the right of jurors to act upon private knowledge has been taken away, there is no longer any legal difficulty in the way of the judge's framing the issues in accordance with both the pleading and the evidence. It has become not only his right, but his duty to do so. And in my judgment, he no more infringes upon the prerogative of the jury when he refuses to receive a verdict entirely beyond the fullest possible range of the evidence than when he refuses to receive a verdict beyond the fullest possible scope of the pleading.

If the jurors, acting within their appropriate sphere, find an untrue verdict upon some issue submitted to them, that is a matter which the judge can not avoid, so far as the trial itself is concerned. (It is to be seen that I am now drawing the distinction between the powers of the judge at the trial, and the powers of the judge on motion for a new trial; for the two functions are different and need not be exercised by the same person.) Whether a verdict is true or not is an issue of fact which the judge (on the trial) has no power to decide; he therefore can not refuse to receive a verdict because it is not true. Whether a verdict is responsive to the issue submitted to the jury is a question of law; and hence, to that extent, the judge may control the verdict as to this, just as he may control it as to matters of form, as to the method in which it shall be received (that is to say whether in open court or at recess), and as to how it shall be published (that is to say, whether by the oral announcement of the foreman, or in writing signed by the foreman, or on a poll of the entire jury).

After a verdict has been received, the power and the function of the judge are very different, both as to extent and as to limitations, from what they were on the trial. (I mention this because in the majority opinion reference has been had to the decisions which declare that the court can not set aside a verdict in a criminal case except on motion of the accused.) If, after the trial, the court is called upon to deal with or set aside a verdict, the judge alone constitutes the court. He considers and, within certain limi-

41

tations, passes on questions both of law and of fact. But before this jurisdiction can be exercised, it must be invoked in the way prescribed by law. In that way only the accused can invoke it; the State can not move. This proposition is in nowise involved in the question as to what are the respective provinces of the judge and of the jury on the trial of the case. It is not out of deference to the jury or to any right of trial by jury that the State is denied the right to move to set the verdict aside; the State is just as remediless to except if the accused is discharged by some act of the judge. How far a judge may take steps, pass orders, and give directions, in order to bring the case to a legitimate end so far as the trial is concerned, is a very different proposition from the proposition as to when and how he must act in order to review and correct an erroneous finding, verdict, or judgment which has already been rendered. The two things stand on so different a basis that it makes only for confusion of thought to attempt to argue from the one instance to the other. Certainly, if the judge had received the verdict of involuntary manslaughter in the present case, the State could not have moved to set it aside; and if the accused had filed no motion, this erroneous result would have become the final end of the case. The point I make is, that the court did not err in guiding the jury while the trial was still in progress, so that they brought their part of the trial to a legal conclusion. In what he did and in what he told them he was merely guiding them as a judge should guide them. He told them the truth—not truth of facts (which would have been an invasion of their province), but truth of law. He told them that the verdict they offered was not a legal verdict; and this was true as a matter of law, and not merely as a matter of fact. He told them that they should retire and attempt to make a lawful verdict. It seems to me that to make a lawful verdict is the very object of having a jury—the only legitimate object. I shall never hold that a judge errs because he tells the jury that it is their duty to make a lawful verdict, or that it is their duty not to make one that is not lawful.

More could be said, but enough has probably been said to effect the sole purpose I have in mind, and that is to protest against our looking to the past, instead of to the present and to the future, in determining what is lawful and right on this proposition which divides us. I realize that my colleagues have taken the side of this

question which many judges, perhaps most judges, to-day would take. I realize that their line of reasoning is consonant with the general consensus of the opinions of intelligent men in the past as to the general propositions involved. But this is a question as to which much progress in thought has been made in the past and is still being made. Of course, I refer, not to the particular proposition involved in the present case, but to the broader general proposition as to how the functions of judge and jury can best be co-ordinated in the trial of a case. The trend of progressive thought is toward condemnation of the general verdict, and toward the substitution of special findings of fact by the jury. Some time soon, perhaps in less than a quarter of a century, I expect to see, if I am living, even criminal cases tried according to this plan, which is surest in its results, freest from chances of error, and, if error is committed, affords the greatest opportunity for easy and certain review and correction. I have merely tried to show that right of trial by jury is not impaired by confining the jury, in their deliberations and finding, to specific issues, but that this great and valuable right is increased in efficiency, as an instrumentality of declaring truth and administering justice, by imposing these limitations. And this is what courts are for—to declare truth and to administer justice.