24244.   CAMPBELL *v.* THE STATE.

172

Decided November 23, 1934.

G. Y. Harrell, for plaintiff in error.

Hollis Fort, solicitor-general, contra.

Guerry, J. The defendant, Maybelle Campbell, was indicted and tried for the offense of murder. The court instructed the jury with reference to a finding and verdict of murder, voluntary manslaughter, and justifiable homicide, and not guilty because of accident. The jury returned a verdict as follows: "We the jury find the defendant guilty of *involuntary* manslaughter and fix her punishment at not more than *seven* or less than *five* years." (Italics ours.) This verdict was returned into open court by the jury as their verdict, and was read by the solicitor-general; whereupon, the court, the jury not having dispersed nor any judgment having been attempted to be entered on the verdict, instructed them as follows: "In my charge to you in this case I charged you relative to two offenses, and one was murder; and I further charged you that if you should not believe, beyond a reasonable doubt, that the defendant was guilty of murder, and yet did not believe that she was justified, if you found that she inflicted a mortal wound on this deceased, and did not believe she was acting under the fears of a reasonable person in inflicting those wounds, if she did inflict any wounds on the deceased, and you did not believe beyond a reasonable doubt that it was the result of misfortune or accident, that you should next inquire into the question of whether the defendant was guilty of voluntary manslaughter. I charged you that if you should determine she was guilty of voluntary manslaughter, it would be your duty to render such a verdict, and fix the punishment, and I will be glad if you would retire to your jury-room, and announce to the court if this verdict you rendered here speaks the verdict you intended to find, or if you intended to render a different verdict. You can retire to your room and consider that. In giving you the charge, I did not give you any instructions touching in-

voluntary manslaughter. The questions were murder or voluntary manslaughter, or acquittal." Counsel for the defendant contends that the first verdict brought into open court found the defendant guilty of involuntary manslaughter of the highest grade and operated as an acquittal of all other grades of homicide; that it was a lawful and legal verdict and was authorized under the law and the facts of the case, and should have been received by the court, and the defendant sentenced on said verdict for the highest degree of involuntary manslaughter; that such verdict so received and published was a finality, and the judge could not legally refuse to receive it, or restrict in any manner the exclusive right of the jury to find and return the verdict, and the action of the judge in requiring them to return to their room for further deliberation was unauthorized by law, and was an invasion of the right of trial by jury as provided for in the constitution of this State. The jury, after retiring for further consideration of the case after the charge of the court above quoted, returned a verdict finding the defendant guilty of *voluntary* manslaughter and fixing her punishment at not less than *five* nor more than *seven* years. Counsel for defendant contends that this last verdict was void and of no effect.

The defendant relies strongly in his position upon the case of *Register* v. *State*, 10 *Ga. App.* 623 (74 S. E. 429), which we find is based almost upon a state of facts identical with those in the present case. However, for reasons that we will attempt to point out, we do not think it is controlling here. In the *Register* case the facts were as follows: "On the trial of an indictment for murder the judge gave the jury instructions relating to the law on murder, voluntary manslaughter, and justifiable homicide in self-defense. He did not instruct them on the law of involuntary manslaughter. The jury, after deliberation, returned a verdict finding the accused guilty of 'involuntary manslaughter,' and this verdict was read and published in open court as their verdict. There was no intimation by any member of the jury that the instructions of the judge on the law of the case had been misunderstood, no further instructions were asked, no member of the jury dissented from the verdict, and nothing occurred tending in any manner to show that the entire jury did not deliberately intend the verdict published in court as their unanimous finding." The judge refused to receive the verdict which they had attempted to return,

and told the jury that the court had not charged them upon the law of involuntary manslaughter, and instructed them to return to their room for further deliberation. This court held: " (1) The verdict of involuntary manslaughter was in legal effect a verdict finding the accused guilty of the highest grade of involuntary manslaughter, and operated as an acquittal of the higher grades of homicide, that is, murder and voluntary manslaughter, as charged in the indictment. (2) The verdict of involuntary manslaughter was a finality, unless objected to in some form by the accused, and the judge could not legally refuse to receive the verdict, or to restrict in any manner the exclusive right of the jury to find and return the verdict, and the action of the judge in refusing to receive the verdict and in requiring the jury to return to their room for further deliberation was unauthorized by law."

The trial judge in the case at bar charged on the law of murder, voluntary manslaughter, justifiable homicide, and accident. As in the *Register* case, supra, he did not charge on the law of involuntary manslaughter. It is to be noted, however, that the verdict rendered by the jury in the *Register* case was: "involuntary manslaughter." The judge in that case refused to receive this verdict or allow it to be filed, and directed the jury to return to their room for further deliberation, stating to them that the court *could not* receive the verdict which they had attempted to return, for the reason that the court had not charged them upon the law of involuntary manslaughter. In the case at bar the trial judge did not tell the jury that he could not receive such a verdict, but did tell the jury that he had charged on two offenses, namely, murder and voluntary manslaughter, and then said to the jury: "I will be glad if you will retire to your room and announce to the court if the verdict you rendered here speaks the verdict you intended to find, or if you intended to render a different verdict. You can retire to your room and consider that. In giving you the charge, I did not give you any instructions touching involuntary manslaughter. The questions were, murder or voluntary manslaughter or acquittal." These instructions, of course, were given before the jury had dispersed or there had been any attempt to enter a judgment on the first verdict. The jury then brought in a verdict finding the defendant guilty of voluntary manslaughter, with the same punishment as contained in the

first verdict. It is to be kept in mind that at the time of the *Register* case, the indeterminate sentence law had not been passed, and that the verdict rendered by the jury in that case was a complete and valid verdict. It was in legal form, lacked nothing to make it complete, was certain and unambiguous, and was one upon which the trial judge could have rendered a legal judgment. The court, therefore, in that case refused to receive a verdict that was complete and final on its face, because he did not deem involuntary manslaughter involved in the case and had not charged the jury the law upon this subject, although the offense for which the jury convicted the defendant was one which was embraced within the charge of murder contained in the indictment. The first verdict rendered in the present case found the defendant guilty of involuntary manslaughter, but at the same time prescribed a punishment inconsistent with that offense. Penal Code, § 68. It was so ambiguous and uncertain on its face that no legal judgment could have been rendered thereon. It found the defendant guilty of the crime of involuntary manslaughter and yet it did not fix the punishment prescribed for that offense. The indeterminate sentence law of this State (Ga. L. 1919, p. 387) provides that "The jury in their verdict on the trial of all cases of felony not punishable by life imprisonment *shall* prescribe minimum and maximum term." It would have been improper for the court to receive the first verdict rendered in this case, for as it stood it meant nothing.

In the case of *Mitchell* v. *State,* 34 *Ga. App.* 505 (130 S. E. 355), the following language from the case of Nemo *v.* Commonwealth, 2 Grat. (42 Va.) 558 is quoted approvingly (the jury in that case having rendered an improper verdict as to punishment, and the court having erroneously entered judgment thereon) : "The verdict itself was manifestly illegal; the jury having ascertained a term of imprisonment shorter than that prescribed by law. But in rendering a judgment for a different and longer term, the court departed from the settled practice in criminal prosecutions, *and* assumed the peculiar province of the jury. . . The proper course would have been to have sent the jury back with proper instructions, to reconsider their verdict. . . It would be dangerous in criminal cases to authorize that to be done in one mode which the law requires to be done in another. . .

The course of proceeding pointed out by the statute may be more or less convenient; but it is the only *legal* mode; and we have no power to carve out another." "In criminal cases the jury *must* assess the punishment of the defendant, if found guilty, and the judgment of the court must follow the verdict. If the punishment assessed by the jury is not in conformity with the provisions of the statute, the court should see that the jury correct their verdict; but the court is not authorized to render judgment for any other or different punishment than that assessed by the jury." Clark *v.* State, 77 Ind. 399. If, therefore, the verdict rendered by the jury was of no effect, and was so uncertain and ambiguous that the true finding of the jury could not be ascertained, it was proper for the trial judge to refuse to receive such a verdict and return them to their room for further deliberation. As was said in *Turbaville* v. *State,* 58 *Ga.* 545, "A verdict of guilty of 'involuntary manslaughter without due caution and circumspection,' is so uncertain as to authorize the judge not to receive it, and to send the jury back; and when they return with a verdict of voluntary manslaughter, which is fully supported by the evidence, the presiding judge was right to receive it, and no error was committed—the judge having intimated no opinion to the jury as to what sort of verdict they should find." See also, in this connection, *Mangham* v. *State,* 87 *Ga.* 549 (13 S. E. 558) ; *Smith* v. *Pilcher,* 130 *Ga.* 350 (60 S. E. 1000).

It is true that the judge also told the jury that he had not charged them on the law of involuntary manslaughter, but there is no complaint in the record before us that it was error to fail to give such instructions, nor is it complained in the record that the recharge given by the court was an expression or intimation of an opinion as to what their verdict should be. The judge did instruct the jury that he had charged only the law on murder and voluntary manslaughter; and this was correct. These were the issues to be tried by the jury as he saw them. We know that there is a diversity of opinion in our courts with reference to the right of a jury to in effect disregard the instructions of the trial judge and return a verdict in a criminal case for an offense not covered by the charge of the court. It was said in the *Register* case, supra, "To refuse to receive the verdict in a criminal case on the ground that the verdict is for a grade of offense charged in the indictment but not covered by the instructions of the court, and without evidence to

support it, is to restrict the exclusive right of the jury in their finding of a verdict to that view of the law and the evidence entertained by the trial judge and is in its last analysis destructive of the right of jury trial." This same question was before the Supreme Court in the case of *Darsey* v. *State*, 136 *Ga.* 501 (71 S. E. 661), and the verdict there rendered was upheld by operation of law because of an evenly divided court. On the principle that the greater includes the less, a verdict for a lesser grade of homicide was upheld in the case of *Spence* v. *State*, 7 *Ga. App.* 825 (68 S. E. 443), although no charge was given as to such lesser grade. In the present case an entirely different question would have been presented had the jury returned a verdict finding the defendant guilty of involuntary manslaughter and prescribing a punishment consistent with that offense. It is to be noted, however, that in the *Register* case, supra, a vigorous dissent was filed by Judge Powell, as to the restriction there placed on the power of the trial judge. In the present case it was not error to return the jury to their room with instructions that the verdict speak the real finding of the jury, which the verdict first returned did not do. The fact that the court again instructed the jury as to the issues made does not in such a case amount to an infringement on the right of trial by jury. It is the duty of the judge to give in charge to the jury the law of the case applicable to the issues involved. This he did. It can not be error for him so to do. While he may not refuse to receive a verdict in proper form, even though for an offense concerning which he has not charged the jury, but which offense is covered by the indictment, he may return to the jury a verdict which is in improper form, with instructions as to the law governing the case. It is proper to charge the law pertaining to the pleadings and the evidence, and we think that the exception taken in this court, that the refusal of the trial judge to receive the first verdict and returning them to their room for further deliberation, is without merit.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*